**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 13, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

        Plaintiff-Appellee,

v.

No. 11-2233

ROBERT GARCIA,

        Defendant-Appellant.

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. 2:10-CR-01122-RB-1)**

Leon Schydlower, El Paso, Texas, for Defendant-Appellant.

David N. Williams, Assistant United States Attorney, District of New Mexico (Kenneth J. Gonzales, United States Attorney, Raul Torrez, Assistant United States Attorney, on the brief) Albuquerque, New Mexico, Plaintiff-Appellee.

Before **LUCERO**, **HARTZ**, and **O'BRIEN**, Circuit Judges.

**O'BRIEN**, Circuit Judge.

Robert Garcia contends the district court should have suppressed evidence obtained from a search of his residence. He argues the authorizing warrant was invalid because (1) it was stale and (2) the address on the warrant did not match his residence.

The warrant was executed before it became stale and within the time constraints of the federal rules. And, because the warrant adopted the supporting affidavit's unambiguous description of the residence, the address mismatch is of no consequence. We affirm.

## BACKGROUND AND PROCEDURAL HISTORY

A reliable confidential informant told Agent Hiram Latin of the Alamogordo Department of Public Safety's Narcotics Enforcement Unit about "a quantity of methamphetamine consistent with trafficking in Robert Garcia's possession." (R. Vol. I at 34.) The informant said the methamphetamine could be found in Garcia's residence and described the residence as a single-wide mobile home[1] without an address but bearing the number 32 on its west end. Latin included this description as well as a photograph of the residence in the affidavit and application for a search warrant he presented to a state judge. Unfortunately, he mistakenly identified the residence as 1220 Mescalero Street. On August 7, 2009, the state judge issued a warrant to "search forthwith the person or place described in the Affidavit." (R. Vol. I at 31.) Although it commanded police to conduct the search "forthwith," the search of Garcia's residence did not occur until August 16, 2009—nine days after the warrant issued.

Agent Michael Mirabal supervised the execution of the warrant. In preparing to for execute it, he discovered 1220 Mescalero Street was not the mobile home described (and pictured) in the affidavit but an "actual structure house." (R. Vol. III at 69.) However, the discrepancy did not trouble him because mobile homes in the area are often

---

[1] The informant also told Agent Latin the residence "was located at the corner of Mesquite and Collins." (R. Vol. I at 45.)

addressed with unit numbers, such as "1220 Mescalero Number 12," so he assumed the residence described and pictured might merely be 1220 Mescalero #32. (R. Vol. III at 69.) In addition, several days prior to execution of the warrant, Agent Latin accompanied Mirabal to the area to point out the mobile home at issue.

The police executed the search against the single-wide trailer bearing the number 32 as depicted in the photograph in Latin's affidavit, even though that residence was not 1220 Mescalero Street. When they entered the residence, officers observed Garcia "crouching near the kitchen sink" and found several bags of methamphetamine in the garbage disposal. (R. Vol. 1 at 49.) In the end, officers "found sixteen bags of methamphetamine (approximately 54 grams of methamphetamine in total), marijuana, pills, around $30,000 in cash, drug paraphernalia, security cameras, ledgers, and other drug-related items inside the home." (R. Vol. I at 50.)

Garcia moved to suppress the evidence obtained in the search. He relied on a variety of rationales in the district court, including the two advanced on appeal: (1) "the search warrant . . . was stale by the time it was executed because it was executed nine days after it was issued;" and (2) the search was invalid because the "warrant was for a different address." (R. Vol. I at 5, 8.) After an evidentiary hearing, the judge denied the motion. He concluded (1) the warrant was timely executed and (2) the photograph and description of the premises in the supporting affidavit, combined with the knowledge of the executing officers, were sufficient to satisfy the Fourth Amendment's particularity requirement.

Garcia then entered into a plea agreement, which allowed him to appeal from the denial of his motion to suppress. He pled guilty to possession with intent to distribute five grams or more of methamphetamine. *See* 21 U.S.C. § 841(a)(1) & (b)(1)(B). He was sentenced to the statutory minimum 60-month term of imprisonment with four years of supervised release to follow.

## DISCUSSION

On review of the denial of a motion to suppress, the ultimate determination of whether a Fourth Amendment violation has occurred is a matter we consider de novo. *United States v. Madden*, 682 F.3d 920, 924-25 (10th Cir. 2012). We must consider the totality of the circumstances and view them in the light most favorable to the prosecution. *Id.* at 924. We accept the district court's factual findings unless they are clearly erroneous. *Id.*

A. Staleness

Garcia's stale warrant argument has two different, but related, rationales. First, he argues, the warrant was stale because the statements of the confidential informant did not provide probable cause to believe the items police sought would still be in his home when the search was conducted. Second, it was stale because the issuing judge commanded the police to execute the warrant "forthwith" and the police failed to justify their nine-day delay. We are not persuaded.

1. Probable Cause

The Fourth Amendment to the U.S. Constitution restricts the circumstances under which a search warrant may issue:

- 4 -

> [N]o Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized.

U.S. Const. amend. IV.

Fourth Amendment jurisprudence teaches that a warrant remains valid only as long as the information in the oath or affirmation supporting its issuance provides probable cause to believe the items sought will still be found in the place to be searched at the time the search is conducted. *United States v. Shomo*, 786 F.2d 981, 983 (10th Cir. 1986). "[W]hether information is too stale to establish probable cause depends on the nature of the criminal activity, the length of the activity, and the nature of the property to be seized." *Id.* at 984. "Thus, where the property sought is likely to remain in one place for a long time, probable cause may be found even though there was a substantial delay between the occurrence of the event relied on and the issuance of the warrant." *Id.* Moreover, when "the affidavit recites facts indicating ongoing, continuous criminal activity, the passage of time becomes less critical." *Id.*

Even though the search here occurred nine days after the warrant issued (and perhaps as many as twelve days after the confidential informant made his statement), there was probable cause to believe drugs and items related to drug distribution would continue to be found in Garcia's home. As the district court explained, "people who use or sell drugs generally keep a ready stash in their house, in addition to other types of evidence that cannot be easily disposed of, and these items were likely to be found in the house, even after nine days." (R. Vol. I at 53.) Indeed, Latin's affidavit said the amount

of methamphetamine the confidential informant observed in Garcia's home was consistent with "trafficking." (R. Vol. I at 34.) Based on his law enforcement experience, Latin told the issuing magistrate "persons who use and deal in drugs normally maintain a supply of drugs in their residence along with other evidence of use and distribution." (R. Vol. I at 35.) The affidavit's statements regarding continuous criminal activity situate this case within the case law making the passage of time less critical. *See Shomo*, 786 F.2d at 984. The delay in the execution of the search warrant did not undermine the probable cause to search Garcia's home.

### 2. "Forthwith"

The state-issued warrant to search Garcia's residence directed the state officers to execute the search "forthwith." (R. Vol. I at 31.) Garcia argues this was a command to police to perform the search with special haste. He assumes that, if the warrant were not executed "forthwith," he would be entitled to exclusion of the evidence obtained from the search.

In federal prosecutions, we gauge the reasonableness of a search under the Fourth Amendment by federal law. *Elkins v. United States*, 364 U.S. 206, 224 (1960); *United States v. Jones*, 701 F.3d 1300, 1309 (10th Cir. 2012). This is true regardless of whether the search is authorized by a state or local magistrate or whether the search is conducted by state or local police. *See Jones*, 701 F.3d at 1309. Under some circumstances, "compliance with state law," including a warrant requirement imposed by a state magistrate, "may be relevant to our Fourth Amendment reasonableness analysis." *Id.* at 1310 (quoting *United States v. Gonzales*, 535 F.3d 1174, 1182 (10th Cir. 2008)). But it

cannot rule the day; the primary focus of our inquiry is always federal law.[2] *Id.* at 1309-10; *Gonzales*, 535 F.3d at 1182-83.

The Fourth Amendment requires probable cause to persist from the issuance of a search warrant to its execution. *See United States v. Gerber,* 994 F.2d 1556, 1560 (11th Cir. 1993); *accord United States v. Sims*, 428 F.3d 945, 955 (10th Cir. 2005); *United States v. Rael*, 467 F.2d 333, 336 (10th Cir. 1972). With that in mind, we consider the federal, and, to a lesser extent, state standards as they may impact Garcia's "forthwith" argument.

Prior to its amendment in 1972, Federal Rule of Criminal Procedure 41 required the execution of search warrants within ten days from the time of issuance and required search warrants to include a command to officers to perform the search "forthwith." *See* Fed. R. Crim. P. 41 advisory committee's note. Historically, most federal courts interpreted both components as substantively significant; they interpreted the 10-day time-limit as an outside limit and the term "forthwith" as a requirement for officers to execute the search as soon as they reasonably could. *See, e.g., United States v. Nepstead,*

---

[2] The focus on federal law resists the pull of local impulse, regardless of its direction:

> In determining whether there has been an unreasonable search and seizure by state officers, a federal court must make an independent inquiry, whether or not there has been such an inquiry by a state court, and irrespective of how any such inquiry may have turned out. *The test is one of federal law, neither enlarged by what one state court may have countenanced, nor diminished by what another may have colorably suppressed.*

*Elkins*, 364 U.S. at 223-24 (emphasis added).

- 7 -

424 F.2d 269, 270-71 (9th Cir. 1970) (holding, like "every court that has been directly presented with [this] problem[,] . . . that the ten-day period merely sets the maximum under the Rule, and the requirement of execution 'forthwith,' depending on the circumstances of each case, may require execution in something less than ten days"). But, now, Rule 41 (like its New Mexico counterpart) has abandoned the "forthwith" requirement, leaving only the fixed time-period. *See* Fed. R. Crim. P. 41(e)(2)(A)(i); Fed. R. Crim. P. 41 advisory committee's note; *see also* N.M.R.A. 5-211(C) & Committee Commentary (noting the New Mexico rule "is patterned after Rule 41 of the Federal Rules of Criminal Procedure). The change was intended to eliminate any overlap or tension between the fixed time-limit and the "forthwith" command. Fed. R. Crim. P. 41 advisory committee's note.

Given this move away from interpreting "forthwith" as a substantive command, we read the term instead as "a belated echo of a medieval royal command." *United States v. Dunnings*, 425 F.2d 836, 841 & n.2 (2d Cir. 1969). This term and its Latin antecedents "were frequently used in various writs as early as the 12th century." *Id.* at 841 n.2. Most significant here, the term persists as a part of the model form for a search warrant in the New Mexico Criminal Procedure Rules. N.M.R.A. Form 9-214. Treating the term as an anachronism, we do not read this warrant, merely incorporating form language, as commanding special haste. Even assuming the officers failed to abide the warrant's instruction to execute it "forthwith," the failure adds almost nothing to our assessment of the reasonableness of the search.

The only colorable time constraint, aside from the requirement of continuing probable cause, was the 10-day limit in Rule 41.[3]  Fed. R. Crim. P. 41(e)(2)(A)(i); *accord* N.M.R.A. 5-211(C) (adopting the same 10-day limit).  The nine-day delay here did not exceed this limit or run afoul of the staleness concerns that animate it.  Garcia is not entitled to exclusion of the fruits of the search.[4]

B.  Proper Premises

With respect to the mismatched description and address of the place to be searched, Garcia emphasizes the officers' knowledge of the inaccuracy well before the search and their considered choice not to obtain an accurate warrant.  Obtaining a corrected warrant may have been the better choice, particularly since there was ample time to do so, but the error does not warrant suppression of the evidence.  Regardless of

---

[3] Rule 41 was amended to provide for a 14-day limit effective December 1, 2009. The search here occurred before this amendment, when the prior 10-day limit applied. *See United States v. Nick*, 398 F. App'x 404, 412 n.6 (10th Cir. 2010) (noting the 2009 amendments took effect on December 1, 2009).

[4] Moreover, Garcia has failed to make a prima facie case for exclusion based on a violation of the terms of the warrant or Rule 41.  Violations of either the instructions in a warrant or Rule 41 require exclusion only when they are prejudicial or intentional. *Sims*, 428 F.3d at 955; *United States v. Pennington*, 635 F.2d 1387, 1389-90 (10th Cir. 1980); *see United States v. Leon*, 468 U.S. 897, 911 (1984) ("[A]n assessment of the flagrancy of the police misconduct constitutes an important step in the [exclusionary rule] calculus.").  Garcia makes no effort to show prejudice or intentional violation of the rule or the warrant's requirements even though, as the proponent of exclusion, he bears the responsibility for doing so.  *United States v. Moore*, 22 F.3d 241, 243 (10th Cir. 1994) ("The proponent of a motion to suppress bears the burden of proof."); *see Simmons v. United States,* 390 U.S. 377, 389 (1968).  He has therefore failed to show he would be entitled to exclusion even if police had failed to obey the terms of Rule 41 or instructions embedded in the warrant.

the error concerning the address, the issuing judge clearly intended for the officers to search the residence described and depicted in the warrant application. There was never any doubt about which residence police should search; this practical reality outweighs the technical error in the warrant. *United States v. Dorrough*, 927 F.2d 498, 500 (10th Cir. 1991) ("[P]ractical accuracy rather than technical precision controls the determination of whether a search warrant adequately describes the premises to be searched.").

The Fourth Amendment's particularity requirement ensures searches do not exceed the scope of the probable cause justifying them. *See Voss v. Bergsgaard,* 774 F.2d 402, 404 (10th Cir. 1985). Our test "'for determining the adequacy of the description of the location to be searched is whether the description is sufficient to enable the executing officer to locate and identify the premises with reasonable effort, and whether there is any reasonable probability that another premise might be mistakenly searched.'" *United States v. Lora-Solano*, 330 F.3d 1288, 1293 (10th Cir. 2003), *quoting United States v. Pervaz*, 118 F.3d 1, 9 (1st Cir. 1997) (quotation marks omitted).

Here, both prongs of this test are satisfied. The photograph and description of Garcia's home in the affidavit, combined with the knowledge of the agents involved, enabled the executing officers to locate the premises without difficulty or confusion and virtually eliminated the possibility of searching the wrong residence. *See United States v. Brakeman,* 475 F.3d 1206, 1211-12 (10th Cir. 2007) (concluding the knowledge of executing officers can supplement the information in the warrant to eliminate any ambiguity).

The district court did not err in denying Garcia's motion to suppress.

AFFIRMED.