**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 15, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

GERMAIN HARRIS,

      Defendant-Appellant.

No. 12-5174

---

**Appeal from the United States District Court**
**for the Northern District of Oklahoma**
**(D.C. No. 4:12-CR-00037-GKF-1)**

---

Robert J. Gorence, Gorence & Oliveros, P.C., Albuquerque, NM, for Defendant-Appellant.

Timothy L. Faerber, Assistant United States Attorney, Northern District of Oklahoma, Tulsa, Oklahoma (Danny C. Williams, Sr., United States Attorney, and Leena Alam, Assistant United States Attorney, with him on the brief), for Plaintiff-Appellee.

---

Before **BRISCOE**, Chief Judge, **KELLY**, and **GORSUCH**, Circuit Judges.

---

**GORSUCH**, Circuit Judge.

---

      Germain Harris's legal troubles had their start in those of another man.

Authorities suspected — and eventually convicted — Alonzo Johnson of

participating in the contract killing of Neal Sweeney, a Tulsa businessman. While officers worked to build their murder-for-hire case against Mr. Johnson and his co-conspirators, a fair number of facts began pointing to Mr. Harris's auto shop as a place where evidence might be hidden. So officers secured a warrant to search the shop and, while executing it, came across an illegal gun and drugs belonging to Mr. Harris. Soon enough, Mr. Harris found himself facing federal charges of his own, charges that ripened to convictions after trial. It is these convictions Mr. Harris now asks us to undo, arguing that the district court should have suppressed the evidence found in his shop or at least granted his motion for a new trial.

Mr. Harris acknowledges that the officers had a warrant for their search and he doesn't contest the manner of its execution. Instead, he argues the warrant was constitutionally defective on its face. Defective because, in Mr. Harris's words, it failed to establish a "nexus" between the crime officers sought to investigate and his auto shop. As Mr. Harris notes, for a search to qualify as "reasonable" within the meaning of the Fourth Amendment we must be able to discern some "nexus between the contraband to be seized or suspected criminal activity and the place to be searched." *United States v. Gonzales*, 399 F.3d 1225, 1228 (10th Cir. 2005) (brackets omitted). This court has held that a "sufficient nexus" is surely established by a search warrant when the materials supporting it describe "circumstances which would warrant a person of reasonable caution [to believe] that the articles sought are at a particular place." *United States v. Biglow*, 562

F.3d 1272, 1279 (10th Cir. 2009) (quotation marks omitted). For its part, the Supreme Court has held that "[p]robable cause exists when there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Grubbs*, 547 U.S. 90, 95 (2006) (quotation marks omitted).

We are satisfied that much existed in this case. As the search warrant affidavit explained, officers held in hand evidence suggesting that Mr. Johnson provided the stolen van used during the murder. The affidavit explained that officers hadn't yet recovered the keys to that van or the murder weapon. It recounted, too, that when officers sought to tail Mr. Johnson's car earlier in the day he drove erratically and hurriedly, apparently in an effort to shake them. Eventually, officers managed to trail Mr. Johnson to Mr. Harris's auto shop, where Mr. Johnson parked his car, pulled out a key, entered after unlocking the door, and left a short time later on a motorcycle after locking up. Relying on experience, an attesting officer indicated that Mr. Johnson's actions were consistent with an effort to evade officers before proceeding to the shop. Of course, these actions also showed that Mr. Johnson had access to the shop. An officer attested, too, that individuals connected to a violent crime or conspiracy are known sometimes to hide incriminating evidence at a friend's place, or to keep it at a common "clubhouse," rather than to retain it in their own homes, which might come under more obvious and immediate suspicion. An officer

explained, as well, that Mr. Harris's auto shop had served as a front for illegal activity before. Viewed in whole, this information is enough, we think, to cause a reasonable person to believe evidence about the murder-for-hire plot could be found at the auto shop. *See, e.g.*, *Biglow*, 562 F.3d at 1279-80 (upholding search based in part on officers' experience about where contraband is typically hidden); *United States v. Sanchez*, 555 F.3d 910, 913-14 (10th Cir. 2009); *United States v. Sparks*, 291 F.3d 683, 689-90 (10th Cir. 2002); *United States v. One Hundred Forty-Nine Thousand Four Hundred Forty-Two & 43/100 Dollars ($149,442.43) in U.S. Currency*, 965 F.2d 868, 873-74 (10th Cir. 1992).[1]

True, the evidence used against Mr. Harris in this criminal case was found only incidentally, while officers were executing a search warrant aimed at the murder-for-hire conspiracy. But that by itself does not a Fourth Amendment violation make. The Fourth Amendment requires us to evaluate the reasonableness of searches and seizures based on the facts known to officers when the event in question occurred, and to avoid as best we can the temptation of offering critiques with the "20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396-97 (1989). Looking at the officers' conduct in this case, we cannot

---

[1] What we are not holding may be nearly as important as what we are. We do not mean to suggest that anywhere a suspect goes after evading police is automatically subject to search. Neither do we mean to suggest that any location a suspect has a key to is automatically subject to search. Had Mr. Johnson proceeded, say, to his grandmother's home and entered there with a key, we might have had a different case. We are persuaded of the search's reasonableness in this case only because of the particular combination of facts in play here.

help but think they had reason at the time to suspect the auto shop would yield evidence against Mr. Johnson, whatever the search's ultimate outcome.

Mr. Harris suggests that *United States v. Rowland*, 145 F.3d 1194 (10th Cir. 1998), requires a different result but we do not see how. The court in *Rowland* recognized that "[p]robable cause to search a person's residence does not arise based solely upon probable cause that the person is guilty of a crime . . . . [T]here must be additional evidence linking the person's home to the suspected criminal activity." *Rowland*, 145 F.3d at 1204. Here the officers *had* "additional evidence" to think Mr. Johnson was hiding evidence in the auto shop. Much as in *Biglow*, the officers in this case could and did point to professional experience suggesting that Mr. Johnson had entrusted evidence of his wrongdoing with a friend or secreted it in a "clubhouse." *See Biglow*, 562 F.3d at 1283. The officers in this case also pointed to evidence suggesting that Mr. Johnson provided the van used in the plot, the keys to which were still missing. They knew, too, that Mr. Johnson had a key to the auto shop. And they suspected that he had taken active steps to shake officers from his trail before proceeding to the auto shop. This just isn't a case like *Rowland* where police sought to search a place associated with the defendant (let alone his home) only because they suspected the defendant of a crime. Here, officers had "additional evidence" suggesting a link between the crime and the place to be searched.

- 5 -

Even if the officers possessed information enough to warrant a search of his auto shop, Mr. Harris contends the information was "stale." It is settled law, Mr. Harris notes, that "[p]robable cause to search cannot be based on stale information." *United States v. Snow*, 919 F.2d 1458, 1459 (10th Cir. 1990). And, as Mr. Harris stresses, the underlying murder officers were investigating took place 18 months before the search of his shop.

Mr. Harris's problem is this. The relevant question is *not* whether a close temporal proximity exists between the crime and the warrant application. The relevant question is whether the information in the search warrant affidavit suggests the items sought are *currently* located in the place officers seek to search. After all, police can hardly be thought constitutionally unreasonable for trying to solve "cold" cases. Instead, the Fourth Amendment faults police only when they seek to conduct a search based on information that "no longer suggests that the items sought will be found in the place to be searched." *Snow*, 919 F.2d at 1459; *see also United States v. Iiland*, 254 F.3d 1264, 1268-69 (10th Cir. 2001).

Eventually recognizing as much, Mr. Harris says we still must rule for him because the warrant application contained "no information from which it could be inferred that . . . the material sought to be recovered remained" in his shop by the time of the search. *United States v. Neal*, 500 F.2d 305, 309 (10th Cir. 1974). As we've already detailed, however, the search warrant affidavit in this case

contained information along just these lines. Police knew that Mr. Johnson had a connection to the van used in the murder; that the keys to the van and the murder weapon were still missing; that the auto shop had been the front for illegal activity before; that suspects in violent crimes sometimes use places like the shop to hide incriminating evidence; and that on the *very same day* they sought the warrant application Mr. Johnson sought to evade police before proceeding to the shop. Under these circumstances, officers possessed information suggesting a "fair probability" that evidence from the murder-for-hire conspiracy was *currently* being kept in the auto shop. *See Grubbs*, 547 U.S. at 95 (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

Separately still, Mr. Harris points out that the search warrant affidavit contains hearsay from a confidential informant whose reliability isn't documented anywhere in the record. To be sure, a search warrant "can be predicated upon . . . hearsay from a reliable . . . informant." *United States v. Monaco*, 700 F.2d 577, 580 (10th Cir. 1983). But Mr. Harris is right that "the basis of a confidential informant's knowledge, as well as his reliability, are important factors in deciding whether information in an affidavit supports a finding of probable cause for a search." *United States v. Avery*, 295 F.3d 1158, 1167 (10th Cir. 2002). He is correct, too, that the search warrant affidavit at issue here contains no discussion at all about the confidential informant's reliability.

Even so, this court has explained that "the complete failure of an affidavit to discuss the reliability of an informant does not automatically preclude a finding of probable cause." *Id.* In particular, "[w]hen there is sufficient independent corroboration of an informant's information, there is no need to establish the veracity of the informant." *United States v. Danhauer*, 229 F.3d 1002, 1006 (10th Cir. 2000). That's the case we have here. Multiple independent sources cited in the search warrant affidavit confirmed Mr. Johnson's involvement in the murder-for-hire plot. The confidential informant's hearsay added nothing on that score. In fact, the only details the confidential informant added to the mix were to link the murder-for-hire plot to Mohammed Aziz, one of Mr. Johnson's eventual co-defendants, and to establish that Mr. Johnson was paid for his involvement. Yet these details were inessential to the search warrant application. Stated differently, the warrant application contained probable cause to think Mr. Johnson was connected to the murder-for-hire conspiracy and to think the auto shop would contain evidence incriminating him, whatever Mr. Aziz's involvement and whatever Mr. Johnson was or wasn't paid. *See United States v. Cusumano*, 83 F.3d 1247, 1250 (10th Cir. 1996) (when a defendant alleges improper material tainted an affidavit, "we may disregard [that] material . . . and ask whether sufficient facts remain to establish probable cause").[2]

---

[2] Though we find Mr. Harris's various Fourth Amendment attacks unsuccessful on their merits, they fail for another reason still. Even if we were to

(continued...)

Apart from but related to his Fourth Amendment challenges, Mr. Harris argues that the district court erred when it denied two (among many) motions he filed seeking a new trial. To prevail on these motions — motions that focused on the potential exculpatory value of newly discovered evidence — Mr. Harris bore the burden of establishing before the district court that:

> (1) the evidence was discovered after trial; (2) the failure to discover the evidence was not caused by the defendant's lack of diligence; (3) the new evidence is not merely impeaching; (4) the new evidence is material to the principal issues . . . involved; and (5) the new evidence would probably produce an acquittal in a new trial.

*United States v. Pearson*, 203 F.3d 1243, 1274 (10th Cir. 2000). For our part, we may review a district court's denial of Mr. Harris's new trial motions under these standards only for abuse of discretion. *Id.*

We see none. The "newly discovered evidence" Mr. Harris presented in his new trial motions consists of two statements about the location of the gun used in the murder plot. In his first motion, Mr. Harris presented a statement made by a member of the conspiracy, Terrico Bethel, suggesting that he (Mr. Bethel)

---

[2](...continued)
assume (without granting) a Fourth Amendment violation, suppression does not automatically follow as the appropriate remedy. In fact, when a police officer executing a search relies on a warrant issued by a neutral magistrate, this court has held that suppression is generally inappropriate unless the search warrant affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Danhauer*, 229 F.3d at 1007 (quoting *United States v. Leon*, 468 U.S. 897, 923 (1984)). Whatever else one might say about the evidence in the search warrant affidavit discussed above, we cannot say it sinks to such a low level.

disposed of the firearm. Mr. Harris's second motion presented testimony by another member of the murder-for-hire conspiracy claiming that Mr. Bethel told him that the gun was "buried . . . in the backyard." Mr. Harris argues that this information vitiates any probable cause that might have existed to search his auto shop. Because it's now clear the murder weapon wasn't in his shop, the reasoning goes, it's now equally clear officers had no probable cause under the Fourth Amendment to search it. And without the search, Mr. Harris observes, the government lacks any evidence to pursue charges against him. It is in this way, he insists, the newly discovered evidence requires an acquittal in his case.

Whatever other problems lurk in this line of reasoning, it rests on at least two faulty premises. First, Mr. Harris assumes that the only thing officers were lawfully authorized to search for in the auto shop was the murder weapon. Yet, as the district court explained, the police sought and obtained a search warrant for various objects besides the murder weapon, including keys to the vehicle used during the murder, paperwork related to the conspiracy, and cell phones. Whatever the newly discovered evidence might say about the gun's whereabouts, it does nothing to undercut the officers' reasonable belief that these other items could be found in the auto shop. Second, Mr. Harris assumes that statements by a co-conspirator concerning the location of an as-yet-undiscovered murder weapon must be credited by police — that the statements preclude the possibility probable cause might exist to search for the weapon anywhere else. But we are aware of

no authority for such a bold proposition. To the contrary, it is settled law that "probable cause doesn't require an officer's suspicion about the presence of contraband to be more likely true than false," and it is surely uncontroversial to suggest that officers can follow alternative and competing leads when both are supported by a "fair probability" they will yield something productive. *United States v. Ludwig*, 641 F.3d 1243, 1252 (10th Cir. 2011) (internal quotation marks omitted). With or without Mr. Harris's newly discovered evidence, then, the search here was lawful, the fruits of it are untainted by any Fourth Amendment violation, the evidence presented against Mr. Harris at trial was lawful, and no lawful basis exists for us to undo the jury's verdict.[3]

The judgment is affirmed.

---

[3] Mr. Harris also argues that the district court erred in ruling on his motion for a new trial without holding an evidentiary hearing. But a district court is not required to pursue process without purpose. *See United States v. Velarde*, 485 F.3d 553, 560 (10th Cir. 2007). As we have seen, no purpose would have been served by an evidentiary hearing about Mr. Bethel's statements. Whatever their import, as a matter of law they could not have negated probable cause to support the auto shop search. Neither, we pause to note, has Mr. Harris sought to pursue on appeal any objection regarding the newly discovered evidence under *Brady v. Maryland*, 373 U.S. 83 (1963), *Franks v. Delaware*, 438 U.S. 154 (1978), or any theory except the one we have discussed.