FILED
United States Court of Appeals
Tenth Circuit

January 31, 2014

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

DONALD L. TISDALE,

Defendant-Appellant.

No. 13-3119
(D. Kansas)
(D.C. No. 6:11-CR-10253-EFM-1)

ORDER AND JUDGMENT*

Before **HARTZ**, **GORSUCH**, and **PHILLIPS**, Circuit Judges.

In April 2011, a confidential informant told Detective J.R. Bartel about a man "keeping and selling" crack cocaine at a house in Wichita, Kansas. The informant agreed to corroborate his story by doing a controlled buy at the house.

Before doing so, however, the police first made sure the informant didn't have any drugs or money on his person or in his car. Detective Bartel then gave the informant some money for the controlled buy and followed him in a separate car to the house. Once they got there, the informant walked up to the front door and went inside.

He came out a short time later, walked back to his car without contacting anyone, and drove to a predetermined rendezvous point to meet with the police. Shortly after arriving,

---

* The case is submitted on the briefs because the parties waived oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

the informant handed an officer a white, chunky substance—crack cocaine. The informant said he had bought it from a man inside the house and had paid using the money from Detective Bartel. He also said the man had told him to come back to the house if he needed more.

About three days later, Detective Bartel included this information in a search-warrant application for the house. In his affidavit, and relying on his nine years in law enforcement, he attested that drug dealers—like the man at the house—typically keep drug-related evidence in the home (e.g., other illicit drugs, packaging materials, scales, money, and firearms). Based on the affidavit, a state-court judge issued a search warrant for the house, concluding that probable cause existed to believe crack cocaine and other drug-related evidence would be found there.

Three days later, the police executed the warrant. First, they knocked on the door, but no one answered. Then they rammed the door open and saw Donald Tisdale inside, so they removed him and arrested him. The ensuing search uncovered (among other things) cocaine, cocaine base, marijuana, and two firearms.

Based on that evidence, a grand jury returned a five-count indictment against Tisdale. The indictment charged him with possessing with intent to distribute cocaine, cocaine base, and marijuana (counts 1–3), being a felon in possession of a firearm (count 4), and possessing a firearm in furtherance of a drug trafficking crime (count 5).

A few months later, Tisdale filed a motion asking the district court to suppress the evidence recovered during the search. He argued that the warrant was stale because the information in Detective Bartel's affidavit did not provide probable cause to believe the

items sought were *currently* in his home when the police searched it. After holding an evidentiary hearing, the district court denied Tisdale's motion, reasoning that probable cause existed when the police executed the warrant because the information in the affidavit suggested ongoing criminal activity.

Tisdale pleaded guilty to the two cocaine charges and the felon-in-possession charge. But his plea agreement reserved the right to appeal the district court's ruling on his suppression motion. The district court sentenced Tisdale to 78 months in prison on each count, the sentences to run concurrently, and entered its final judgment. Tisdale filed a notice of appeal, challenging the order denying his suppression motion.

On appeal, Tisdale renews his Fourth Amendment staleness argument, contending that by the time the police searched his home the information in Detective Bartel's affidavit no longer provided probable cause to do so. We disagree.

Information in a search-warrant affidavit is not stale if it suggests the items sought are currently located in the place officers seek to search. *United States v. Harris*, 735 F.3d 1187, 1192 (10th Cir. 2013). "[T]he Fourth Amendment faults police only when they seek to conduct a search based on information that no longer suggests that the items sought will be found in the place to be searched." *Id.* (internal quotation marks omitted).

Here, the information in Detective Bartel's affidavit suggested a fair probability that the items sought would still be in Tisdale's home when the police conducted the search. To start, during the controlled buy, the man inside Tisdale's house told the confidential informant to come back to the house if he needed more crack cocaine. That suggests ongoing criminal activity, and we have held that, "when the affidavit recites facts

indicating ongoing, continuous criminal activity, the passage of time becomes less critical" to the probable-cause question. *United States v. Garcia*, 707 F.3d 1190, 1195 (10th Cir. 2013) (internal quotation marks omitted). That the informant told Detective Bartel about a man keeping and selling cocaine at Tisdale's house also suggests ongoing criminal activity. And the controlled buy corroborated the informant's story, supporting the credibility of the informant's statements. *See United States v. Artez*, 389 F.3d 1106, 1111 (10th Cir. 2004) (holding that a tip from a confidential informant that drugs are being distributed at a particular location "may be corroborated through the arrangement of a controlled purchase at the suspect location").

Indeed, the very fact that a controlled buy took place at Tisdale's home suggests that more would drugs be found there. *See id.* at 1114 ("The two controlled purchases that occurred in this case supported . . . suspicion that methamphetamine would be found at Defendant's residence."). Further, Detective Bartel, invoking his law-enforcement experience, attested to his belief that drugs and drug-related evidence would be found in Tisdale's home, which also suggests such evidence would be there. *See Garcia*, 707 F.3d at 1195; *United States v. Mathis*, 357 F.3d 1200, 1205 (10th Cir. 2004) (noting that a law-enforcement agent's opinion, based on his professional expertise, that evidence of illegal activity will be found in the place to be searched is entitled to consideration in the probable-cause analysis). Finally, common sense suggests that a person who sells drugs from his house will "generally keep a ready stash in [the] house," and the stash usually won't disappear a week after a controlled buy. *Garcia*, 707 F.3d at 1195 (rejecting Fourth

Amendment staleness challenge where about 12 days had passed between when probable cause arose and when the search occurred).

In sum, under these circumstances, the information in Detective Bartel's affidavit suggested a fair probability that the items sought were currently in Tisdale's home when the police executed the search. Consequently, the district court correctly denied Tisdale's suppression motion. We affirm the district court's judgment.

ENTERED FOR THE COURT

Gregory A. Phillips
Circuit Judge