**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 3, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

FERNANDO TOPETE-MADRUENO,

    Defendant - Appellant.

No. 20-2180
(D.C. No. 1:18-CR-04172-JAP-1)
(D. N.M.)

_____

**ORDER AND JUDGMENT***
_____

Before **HARTZ**, **HOLMES**, and **BACHARACH**, Circuit Judges.
_____

Defendant Fernando Topete-Madrueno was found guilty by a jury on charges

of possession with intent to distribute at least 50 grams of methamphetamine,

possession with intent to distribute heroin, maintaining a drug-involved premises, and

possession of a firearm in the furtherance of a drug-trafficking crime. He later

pleaded guilty to a fifth charge—possession of a firearm and ammunition by someone

previously convicted of a felony—but reserved his right to appeal any adverse rulings

on his pretrial motions. He was sentenced to a term of imprisonment of 180 months

to be followed by five years of supervised release.

---

* This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

On appeal Defendant has adequately raised two issues: First, he argues that evidence seized during a search of his residence must be suppressed because the search was not supported by probable cause. He concedes that the affidavit supporting the warrant for the search established probable cause, but he argues that by the time of the search, the officers conducting the search had learned facts that undermined that probable cause. Second, he argues that evidence seized during the search of a vehicle parked at the residence must be suppressed because no evidence tied the vehicle to drug trafficking.  The district court rejected both arguments after conducting a suppression hearing. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm the district court's rulings. Regarding the first argument, we hold that the district court did not clearly err in finding that the officers did not know that probable cause had dissipated when they conducted the search of the residence. As for the second argument, we hold that even if there was not probable cause to search the vehicle, suppression of the evidence is inappropriate because the officers could rely in good faith on the warrant authorizing the search of all vehicles parked at the residence.

I.    BACKGROUND

While investigating a drug-trafficking organization, an FBI-led law-enforcement task force identified trailer D-23 at 9000 Zuni SE in Albuquerque, New Mexico, as a possible stash house for the organization and began surveillance on the trailer in April 2018. On July 31, 2018, an undercover officer directed an informant to place a phone call to Sergio Samaniego-Villa, a suspected central figure in the

organization, to arrange the purchase of one ounce of methamphetamine and three ounces of heroin. The team surveilling 9000 Zuni observed Bladimir Angulo exit the trailer, enter a black Ford Fusion, and drive to meet the purchasers at the predetermined location. When he arrived, he entered the vehicle of the informant and the undercover officer and sold the officer the requested methamphetamine and heroin. Angulo then returned to his car and drove back to 9000 Zuni.

A similar sequence occurred on August 8. The undercover officer called Samaniego-Villa directly and arranged for the purchase of four ounces of methamphetamine and three ounces of heroin. Later that day the surveillance team observed Angulo leave the trailer at 9000 Zuni in the black Ford Fusion and drive to meet the undercover officer at the arranged location. After arriving, Angulo sold the officer the requested methamphetamine and heroin.

While surveilling 9000 Zuni, officers observed that Defendant also resided there. They further observed that in addition to the black Ford Fusion driven by Angulo, there was a black Ford Edge regularly present at the trailer, although it was driven exclusively by Defendant. Defendant was not observed participating in any drug-related activities.

On August 9 the FBI investigation was interrupted when a number of suspected members of the drug organization were arrested by state law enforcement. The organization halted all contacts with the task force's informants and undercover officers, so the task force decided to make arrests and execute searches based on the information already gathered.

On November 15 the task force conducted surveillance at 9000 Zuni to "freshen up" their probable cause for that location. R., Vol. III at 26. They observed that the black Ford Edge driven by Defendant was still parked by the trailer, but the black Fusion had been replaced by a red Pontiac sedan, which Angulo drove to the home of a known drug trafficker. According to testimony at the district-court suppression hearing, Angulo was also observed leaving the trailer to deliver narcotics on November 20.

On November 19, Task Force Officer (TFO) Jerrod Pelot executed an affidavit and obtained from a magistrate judge a search warrant for 9000 Zuni. The warrant authorized a search of the trailer and "any and all vehicles, outbuildings and sheds located at [9000 Zuni]." R., Vol. I at 46. The affidavit sketched the drug organization's operations, described in detail the two controlled purchases with Angulo, and summarized the observations during the November 15 surveillance. TFO Pelot concluded that (1) 9000 Zuni was likely being used as a stash house by the drug organization and (2) there was probable cause to believe Angulo was trafficking in methamphetamine and heroin for the organization. The only thing that the affidavit said about Defendant, however, was that he was a cohabitant at 9000 Zuni. The warrant was valid for 14 days. Execution of the warrant was delayed for a few days as the task force made arrangements to simultaneously arrest members of the drug organization, some of whom were in a different state; it was then further delayed because of a shortage of manpower over the Thanksgiving holiday.

4

Also on November 19, TFO Pelot obtained warrants for GPS tracking of several cell phones, including one belonging to Angulo. Because it takes several days for such warrants to be processed, officers did not receive location information on Angulo's phone until about November 26, when it showed the phone to be at 710 Dan Avenue SE in Albuquerque. Officers confirmed Angulo's presence at that address through surveillance on both November 26 and 27.

On the morning of November 28 officers executed the search warrant for 9000 Zuni and found Defendant in the front bedroom of the trailer. Officers saw narcotics and a handgun on a shelf next to his bed. Further search of the trailer revealed additional "drugs and paraphernalia throughout the house." R., Vol. III at 27. Defendant was the sole occupant of the trailer; Angulo appeared to have moved out, as the back bedroom in the trailer was empty. Officers also searched the black Ford Edge parked in the carport. They found a cell phone, documents bearing Defendant's name, and three tin foil balls containing heroin. Defendant was arrested at the scene.

Angulo was arrested at 710 Dan later that morning. Both Angulo and the apartment manager confirmed to the officers that Angulo had recently moved to that address. TFO Pelot then obtained a search warrant for 710 Dan.

After Defendant was indicted, he moved to suppress all physical evidence obtained from the trailer and the Ford Edge during the search of 9000 Zuni. He claimed (1) that the officers lacked probable cause to search the trailer because they knew that Angulo had moved to 710 Dan before they executed the 9000 Zuni warrant and (2) that there was no evidence that the Ford Edge was being used for drug

5

trafficking. The district court held a hearing at which TFO Pelot was the sole witness. The court denied the motion, finding credible TFO Pelot's testimony that officers were not aware that Angulo had changed his residence before they executed the 9000 Zuni warrant, and finding it reasonable to expect 9000 Zuni to house evidence of criminal activity, regardless of Angulo's presence. The court also found that Defendant lacked standing to challenge the search of the Ford Edge and that, regardless, the search was valid.

## II.    DISCUSSION

### A.    Execution of Search Warrant

Defendant challenges the district court's denial of his motion to suppress evidence seized during the execution of the 9000 Zuni warrant. We conclude that denial of the motion was proper as there was probable cause for the search of the trailer, and, at a minimum, the good-faith exception to the exclusionary rule would allow admission of any evidence seized from the Ford Edge.

### 1.    Standard of Review

"When reviewing the denial of a motion to suppress we analyze factual matters for clear error and the determination of legal reasonableness de novo." *United States v. Riccardi*, 405 F.3d 852, 859 (10th Cir. 2005). "We will conclude the district court clearly erred only if we are left with the definite and firm conviction that a mistake has been committed." *United States v. Xiang*, 12 F.4th 1176, 1182 (10th Cir. 2021) (internal quotation marks omitted). "We consider the totality of the circumstances

6

and view the evidence in the light most favorable to the government." *Riccardi*, 405 F.3d at 860.

### 2.    Search of the Trailer

To lawfully search a residence, law-enforcement officers generally need a warrant supported by probable cause. *See United States v. Dalton*, 918 F.3d 1117, 1127 (10th Cir. 2019). Defendant concedes, as he should, that when the warrant for 9000 Zuni was issued on November 19, 2018, there was probable cause to search the trailer. He argues, however, that before the warrant was executed on November 28, officers learned that Angulo had moved from 9000 Zuni to 710 Dan. Because all the evidence in support of the warrant for 9000 Zuni was derived from Angulo's actions, Defendant contends that the probable cause supporting the warrant for 9000 Zuni had therefore dissipated before its execution.

We have held that probable cause must exist not only for the issuance of a search warrant, but also when it is executed. *See United States v. Garcia*, 707 F.3d 1190, 1195–96 (10th Cir. 2013). Probable cause may dissipate simply from the passage of time as evidence becomes stale. *See Dalton*, 918 F.3d at 1127. But new information can also undermine what had been probable cause. *See id.* at 1127–28; *United States v. Grubbs*, 547 U.S. 90, 95 n.2 (2006) ("[P]robable cause may cease to exist after a warrant is issued. The police may learn, for instance, that contraband is no longer located at the place to be searched."); 2 Wayne R. LaFave, *Search & Seizure: A Treatise on the Fourth Amendment* § 4.7(a) (6th ed. 2021) ("[E]ven

without any delay at all, new events known to the police may dissipate the recent probable cause showing to the magistrate.").

In the case before us the relevant question is whether the officers executing the 9000 Zuni warrant had determined beforehand that Angulo had moved. The district court, however, credited TFO Pelot's testimony at the suppression hearing that officers had not determined that Angulo had moved out of 9000 Zuni before they executed the warrant. This finding is not clearly erroneous. There was no evidence that the officers had seen or received information that Angulo had moved belongings from 9000 Zuni or had moved belongings to 710 Dan. All they knew was that his phone had been used at 710 Dan during the prior two days. They also knew that Angulo had resided at 9000 Zuni for several months. The officers had no reason to infer that he had decided to change residences over the Thanksgiving holiday. A temporary (two-day) visit to 710 Dan would have been much more likely. The district court found that the evidence did no more than "suggest[] that Angulo was frequenting [710 Dan]." Order at 10.

Defendant's best support for his thesis is language in TFO Pelot's affidavit for the 710 Dan search warrant:

> On November 26, 2018, Agents/TFOs *conducted surveillance to determine [Angulo's] current residence* as part of the investigation, and to plan for the execution of the federal arrest warrant. Agents/TFO located [Angulo] at the SUBJECT PREMISES. [Angulo] was also observed at the SUBJECT PREMISES on November 27, 2018. On November 28, 2018, [Angulo] was taken into custody outside the SUBJECT PREMISES. Subsequent to his arrest, [Angulo] stated the SUBJECT PREMISES was his residence. The manager for the apartments where the SUBJECT PREMISES was located was interviewed

**8**

and also stated that [Angulo] had recently rented the apartment as the sole occupant.

R., Vol. I at 86 (emphasis added). He argues that the emphasized language shows that the task force must have known Angulo had moved out of 9000 Zuni by November 26 because otherwise there would be no need to find his *current* residence. This point is not without force and might have persuaded a different factfinder. But there is no evidence that any officer had any knowledge of a move by Angulo before the cell-phone-location evidence was received. And the purpose of seeking that location evidence was not to learn of a new permanent residence for Angulo but only to determine where he might best be found (what might be termed his temporary location or residence) when the time came to arrest the members of the drug organization. The author of the above-quoted paragraph, TFO Pelot, testified during the suppression hearing that he only became aware that Angulo had moved "at the time of the execution of the search warrant [for 9000 Zuni]." R., Vol. III at 29. The district court found this testimony credible. A reasonable judge could, and did, decide that the affidavit language relied on by Defendant was simply the sort of inartful expression one can expect to find when a law-enforcement officer (not an English professor) is hurrying to obtain a search warrant after discovering new important information.

We affirm the district court's ruling that the search of the trailer was lawful.

### 3.     Vehicle Search

In addition to his general objection to the search of 9000 Zuni, Defendant separately challenges the search of the Ford Edge parked next to the trailer. The district court rejected the challenge on two grounds: (1) Defendant lacked standing to challenge the search of the vehicle because he had not shown that he had permission to use the vehicle from the registered owner, and (2) the search of the vehicle was supported by probable cause because it was reasonable for the officers to believe that the vehicle was controlled by a resident of the premises. The court did not reach the government's alternative argument that exclusion of evidence seized from the vehicle would be contrary to the good-faith exception to the exclusionary rule. To resolve the matter, we need not address Defendant's standing.

To begin with, we note that Defendant appears to be somewhat inconsistent in his arguments regarding the vehicle. The argument in his opening brief challenging the search of the trailer includes the following passage: "Angulo's activities were provided to the Magistrate Judge to establish that the trailer and the vehicles parked there would be the site of contraband. And at the time that the warrant was issued (November 19, 2018), those facts would have been sufficient for probable cause." Aplt. Br. at 22. The brief goes on to argue that probable cause was dissipated by the officers' alleged knowledge that Angulo had moved by the time the warrant was executed. But, as we have already explained, probable cause was not dissipated. It would therefore follow that when the search warrant was executed there was still probable cause to search the trailer and the vehicles. This conclusion, however, is

**10**

difficult to reconcile with Defendant's argument later in the brief that there was not probable cause to search the Ford Edge because there was no evidence that Angulo had access to it or that the vehicle was otherwise used in drug transactions.

In our view, the treatment of the issue in Defendant's brief suggests the propriety of resolving this issue under the good-faith exception to the exclusionary rule. Whatever the ultimate merits of the issue, it is hardly obvious that the search of the vehicle lacked probable cause, since Defendant appeared to be an owner of the premises. *See United States v. Gottschalk*, 915 F.2d 1459, 1461 (10th Cir. 1990) (premises search warrant generally encompasses "those automobiles either actually owned or under the control and dominion of the premises owner or, alternatively, those vehicles which appear, based on objectively reasonable indicia present at the time of the search, to be so controlled"). In that circumstance, the officers were entitled to rely on the decision by the magistrate judge to include the vehicle among the places that could be searched under the warrant. *See United States v. Leon*, 468 U.S. 897, 922–23 (1984). We affirm the district court's decision not to suppress evidence seized from the Ford Edge.

### B.    Admission of Cell-Phone Evidence

Defendant also challenges the admission of cell-phone evidence, apparently text messages from several phones. At different parts of his briefs he complains that the evidence was hearsay or irrelevant and that the government improperly delayed disclosure of the evidence before trial.

For this court to properly assess the validity of these arguments, Defendant would need to describe in some detail the specifics of the challenged evidence, the basis of the challenges, the responses to the challenges, and the grounds on which the district court rejected the challenges. In the absence of this information, which Defendant has not provided, we see no basis to overturn the rulings of the district court.

## III.  CONCLUSION

We **AFFIRM** the judgment below.

Entered for the Court

Harris L Hartz
Circuit Judge