**UNITED STATES COURT OF APPEALS**

**March 3, 2015**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

AMOS BECKNELL,

    Defendant-Appellant.

No. 13-3311
(D.C. No. 6:13-CR-10071-JTM-1)
(D. of Kan.)

**ORDER AND JUDGMENT**[*]

Before **TYMKOVICH**, **EBEL**, and **GORSUCH**, Circuit Judges.

A jury convicted Amos Becknell of a variety of drug charges arising from a search of his home in Wichita, Kansas. He claims the district court made a number of errors at trial, including improperly allowing a government witness to testify regarding information gleaned from a confidential informant in violation of the Confrontation Clause and the Federal Rules of Evidence, and also allowing the same witness to draw express conclusions about Becknell's mens rea. In addition, he claims the district court erred before and after trial by rejecting (1) a

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

probable cause challenge to the search warrant of his home, (2) his challenge to the sufficiency of the evidence at trial, and (3) a Commerce Clause challenge to the felon-in-possession-of-a-firearm statute.

We find no reversible error in the district court's rulings. Consequently, exercising jurisdiction under 28 U.S.C. § 1291, we AFFIRM.

## I. Background

The Wichita Police Department launched a drug investigation after a confidential informant reported that an occupant of a residence in Wichita, Kansas, was selling crack cocaine from the home.

Officers conducted three searches of a trash can sitting on the street in front of the residence. The first search revealed a small quantity of marijuana and three letters addressed to the home. The second revealed more marijuana. The third search revealed two corners of plastic sandwich bags, containing white residue, which later tested positive for cocaine. The search also discovered eleven other plastic bags with torn corners. Officers concurrently conducted surveillance on the home, and noted multiple instances in which individuals arrived at the home, entered, and left quickly.

Based on this information, officers filed an affidavit for a search warrant. When officers arrived to execute the warrant, they spotted Becknell leaving the residence. Because he had existing warrants on other charges, officers pulled him over and arrested him. When officers told him of the search warrant, Becknell

informed them that they would find several firearms in the home. He admitted owning those firearms (illegally, in light of his status as a felon), but denied any knowledge of narcotics. Officers requested the home keys from Becknell, which he provided.

When officers entered the home, they located a Beretta .380-caliber semi-automatic pistol on one of the couches in the living room. On a coffee table directly in front of that couch, officers found more torn plastic baggies and a plastic bag containing crack cocaine. On another couch, officers found a cigarette box, which contained two plastic bags. The smaller bag contained white powder that tested positive for cocaine; the larger contained "rocks" later confirmed to be crack cocaine. Both the bag on the table and the cigarette box were within ten feet of the pistol. Officers also located cocaine in a plastic container on a shelf in the hallway, also within ten feet of the gun. Becknell's right middle fingerprint was lifted from the container.

Officers located two other firearms in the home—an SKS rifle and a Smith and Wesson .357 revolver. Testimony at trial established that all three firearms traveled in interstate commerce to arrive in Kansas.

At trial, government witnesses testified that much of the cocaine was distribution-quantity. They further testified that, despite the cocaine and cocaine packaging seized, officers found no cocaine use paraphernalia in the home. Witnesses also testified that bags with torn corners—like the ones located in the

third search—often evince cocaine distribution because of how crack cocaine is sold. Additionally, officers testified at trial that the numerous brief visits they observed during their surveillance also indicated drug dealing.

Becknell was indicted and convicted on three charges: (1) possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C); (2) possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c); and (3) three counts of felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2).

## II. Analysis

As we explain below, the district court did not commit any reversible error.

### A. *Testimony Concerning the Confidential Informant*

Becknell first claims the district court erred by allowing Officer Ryan Schomaker to mention the confidential informant's tip in the course of explaining how he began his investigation in this case. According to Becknell, this contravened the court's instructions to the prosecutor to avoid mentioning the informant and to avoid "get[ting] into why . . . [officers] were investigating." R., Vol. III at 86–87.

We review the admission of evidence under the Federal Rules of Evidence for abuse of discretion, with special deference to hearsay determinations. *United States v. Chavez*, 229 F.3d 946, 950 (10th Cir. 2000). Accordingly, we will not reverse a district court's decision if it "falls within the bounds of permissible

-4-

choice in the circumstances."  *United States v. Cardinas Garcia*, 596 F.3d 788, 797 (10th Cir. 2010).  We review a district court's Confrontation Clause decision de novo.  *United States v. Kamahele*, 748 F.3d 984, 997 & n.4 (10th Cir. 2014).

### 1. Applicable Law

Hearsay—a statement that "the declarant does not make while testifying at the current trial or hearing" that "a party offers in evidence to prove the truth of the matter asserted in the statement"—is inadmissible.  Fed. R. Evid. 801(c)(1)–(2).  But testimony not offered to prove the matter asserted that is "offered instead for *relevant* context or background" is not hearsay.  *United States v. Hinson*, 585 F.3d 1328, 1336 (10th Cir. 2009).  Importantly, the "matter asserted is the fact being asserted by the declarant in uttering the statement," which is "not necessarily the matter that the party offering the statement into evidence is trying to prove with the statement."  *United States v. Lewis*, 594 F.3d 1270, 1282 (10th Cir. 2010) (internal quotation marks omitted).

"One useful clue" in distinguishing hearsay from permissible background information is "whether the purported background evidence is necessary for the government to be able to tell a coherent story about its investigation."  *Hinson*, 585 F.3d at 1337.  The "absence of a tenable non-hearsay purpose for offering [the evidence] establishes that the evidence could have been offered only for its truth value."  *Id.* (emphasis omitted).  Accordingly, if "the government introduces evidence that bears on the ultimate issue in a case" but is unnecessary to "explain

-5-

the background of a police investigation, the only reasonable conclusion we can reach is that the evidence was offered, not as background, but as support for the government's case." *Id.*

This does not mean that evidence is automatically hearsay if it is not strictly necessary for an investigation. Necessity is simply "one useful clue" in the hearsay inquiry. Consequently, out-of-court statements not technically necessary to a coherent story may still be admitted if the proponent can show through other means they are not offered for the truth of the matter asserted.

Finally, because improperly admitted hearsay is a non-constitutional error, that error is harmless "unless it had a substantial influence on the outcome or leaves one in grave doubt as to whether it had such effect." *United States v. Griffin*, 389 F.3d 1100, 1104 (10th Cir. 2004) (internal quotation marks omitted).

Confrontation Clause questions often arise in the same context as hearsay questions. The Clause guarantees criminal defendants the right to confront witnesses against them. U.S. Const. amend. VI. It applies independently to out-of-court statements introduced at trial regardless of their admissibility under the law of evidence. *Crawford v. Washington*, 541 U.S. 36, 50–51 (2004).

The Clause bars "testimonial" hearsay statements unless the declarant is unavailable and the defendant had a prior opportunity for cross-examination. *United States v. Mendez*, 514 F.3d 1035, 1043 (10th Cir. 2008). It only does so, however, if those statements are offered to prove the truth of the matter asserted.

*Kamahele*, 748 F.3d at 1000. Consequently, a conclusion that testimony is not hearsay because it was not offered for the truth of the matter asserted informs its Confrontation Clause status. Finally, confidential informant statements are testimonial. *United States v. Lopez-Medina*, 596 F.3d 716, 730 (10th Cir. 2010).

Any Confrontation Clause errors receive constitutional harmless-error analysis, "under which the beneficiary of a constitutional error must prove beyond a reasonable doubt" that "the error complained of did not contribute to the guilty verdict." *United States v. Chavez*, 481 F.3d 1274, 1277 (10th Cir. 2007) (internal quotation marks omitted). To determine whether such an error actually contributed to the guilty verdict, we consider "the context in which the statement was admitted, how it was used at trial, and how it compares to the properly admitted evidence." *Id.*

### 2. Application

Becknell claims three statements by Officer Schomaker violated the court's ruling, and consequently violated both the Federal Rules of Evidence and the Confrontation Clause.

First, the prosecutor asked whether many police actions "come from concerns or reports made by the community or members of the community." R., Vol. III at 91. Officer Schomaker responded affirmatively. Second, the prosecutor asked the officer how he began the investigation, to which he responded that he had "received some information about drug activity at

[Becknell's residence]." *Id.* at 92. Third, the prosecutor asked the officer whether he was working other cases at the time of the investigation. He responded affirmatively, stating that "[t]hese cases, such as the neighborhood complaints or drug complaints that we get in, we will be assigned these different complaints from different tips . . . at any given time I'm working [twenty] different complaints." *Id.* at 282.

Regardless of whether admission of this testimony violated the rules of evidence addressing hearsay or the Confrontation Clause, any such violation did not substantially influence the outcome and was, instead, harmless beyond a reasonable doubt. The officer did not refer to the fact that a confidential informant existed, so the jury never learned that information. And the government did not use this challenged testimony as a key point in its case. Moreover, as we discuss more fully below, the government presented other substantial and unchallenged evidence linking Becknell to drug trafficking.

In sum, the district court did not commit reversible error by admitting Officer Schomaker's testimony.

### B. Opinion Testimony

Becknell next claims the district court abused its discretion in overruling two objections to Officer Schomaker's opinion testimony. He first objected when the prosecutor asked the officer to "discuss some of the factors that [he looks] at or consider[s] as to whether or not the firearm is possessed . . . in furtherance of a

-8-

drug trafficking crime." R., Vol. III at 212–13. The court overruled that objection. Officer Schomaker responded, "[l]ocation . . . it's either on somebody's person or where they can actually access it . . . pretty quickly, as in this case." *Id.* at 214. He explained that he also looks at "where the drugs are compared to the firearm and the accessibility of other weapons." *Id.*

During the same colloquy, the prosecutor asked whether "the type of firearm play[s] into consideration [in determining whether a firearm was there based on drug dealing]." *Id.* Officer Schomaker explained that "[i]t can. . . . by the size" and "the amount of ammunition it holds. If I am going to fire an item, I don't want to be holding a small handgun . . . I want to have something that holds a good amount of rounds." *Id.* The prosecutor then immediately asked the officer to describe "how close" the Beretta was to the cocaine found in the living room; Officer Schomaker obliged. *Id.* at 214–15.

Becknell made his second objection when the prosecutor asked whether Officer Schomaker was "able to . . . form an opinion whether or not the money" seized in the search was "proceeds of drug distribution," and on what basis he had formed that opinion. *Id.* at 216. The court also overruled this objection. The officer went on to assert that the money was proceeds of drug distribution, and that he based his opinion on "my experience . . . and the fact that drug dealers will keep cash around because that's how they get paid." *Id.* The prosecutor then immediately asked whether "the amount of money that was collected in this case"

was "consistent with the drugs that were collected." *Id.* at 216–17. The officer indicated that it was.

We review the admission of evidence for the abuse of discretion. *United States v. Chavez*, 229 F.3d 946, 950 (10th Cir. 2000). Even where admission was an abuse of discretion, we will not reverse if the error was harmless. *United States v. Tome*, 61 F.3d 1446, 1449 (10th Cir. 1995).

Opinion testimony is "not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704(a). Rule 704(b) provides an exception: In a criminal case, "an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense." Fed. R. Evid. 704(b).

Rule 704(b) is narrow, and "only prevents experts from expressly stating the final conclusion or inference" regarding a defendant's mental state. *United States v. Richard*, 969 F.2d 849, 854 (10th Cir. 1992). Experts may testify to "facts or opinions from which the jury could conclude or infer the defendant had the requisite mental state." *Id.* at 855. But they may not give testimony that, if believed, "necessarily dictates the final conclusion" that the defendant "possessed the requisite mens rea." *United States v. Wood*, 207 F.3d 1222, 1236 (10th Cir. 2000).

Rule 704(b) is implicated here by the "in furtherance of" language in 18 U.S.C. § 924(c)(1)(A), which "relates to the defendant's intent." *United States v.*

*Garza*, 566 F.3d 1194, 1200 (10th Cir. 2009). Thus, a district court has committed reversible error if it allows an expert to testify that a defendant in a § 924(c)(1)(A) case possessed a firearm "in furtherance of" a crime. *Id.*

The district court did not err in permitting Officer Schomaker's testimony. To be sure, the officer did not "expressly stat[e] the final conclusion or inference," *Richard*, 969 F.2d at 854, that Becknell possessed the gun in furtherance of drug trafficking. Yet, in context, he did everything but state that final inference. After all, he responded to the government's specific request to "discuss some of the factors" he considers in determining whether a firearm is possessed "in furtherance of a drug trafficking crime." His detailed description of those factors, followed immediately by his description of the facts of this case tracking those factors, came close to "necessarily dictat[ing] the final conclusion" to the jury. *See Wood*, 207 F.3d at 1236.

Nevertheless, in light of our precedent, we cannot say the trial court abused its discretion in allowing this testimony. While the testimony was close to the line, the jury was still left to the ultimate finding of fact. *See, e.g.*, *United States v. Orr*, 68 F.3d 1247, 1252 (10th Cir. 1995) (finding no Rule 704(b) violation where witness testified that defendant's alleged bank fraud would only succeed if he continued to find "bank sucker[s]," but did not opine on defendant's criminal intent); *Richard*, 969 F.2d at 854–55 (finding no violation where testifying officer identified each defendant's role in a drug transaction but drew no express

-11-

conclusion on their awareness of the transaction's nature). *But see United States v. Dennison*, 937 F.2d 559, 564–65 (10th Cir. 1991) (affirming district court's exclusion of defendant's expert testimony that a hypothetical person—identical to the defendant in all relevant ways—could not form the necessary mens rea). In any event, any error was harmless in light of the substantial evidence provided at trial.

In sum, the district court did not err in admitting Officer Schomaker's opinion testimony.

### C. Probable Cause Underlying Search Warrant

Becknell also claims the district court improperly denied his motion to suppress evidence seized at his home. He contends the application for the search warrant failed to provide a substantial basis for finding probable cause.

Determinations relating to a search warrant's sufficiency are legal questions reviewed de novo. *United States v. Perrine*, 518 F.3d 1196, 1201 (10th Cir. 2008). But we do not review the issuing judge's probable cause determination de novo. *See id.* That decision is "entitled to great deference," and we "need only ask whether, under the totality of the circumstances presented in the affidavit, the magistrate judge had a substantial basis for determining that probable cause existed." *United States v. Artez*, 389 F.3d 1106, 1111 (10th Cir. 2004) (internal quotation marks omitted).

An affidavit establishing probable cause demonstrates a connection between the place to be searched and the "contraband to be seized or suspected criminal activity." *United States v. Gonzales*, 399 F.3d 1225, 1228 (10th Cir. 2005). A sufficient connection is established when the affidavit "describes circumstances" warranting "a person of reasonable caution" to believe "the articles sought are at a particular place." *United States v. Biglow*, 562 F.3d 1272, 1279 (10th Cir. 2009) (internal quotation marks omitted).

When an affidavit is based only in part on an informant's statements, its "complete failure" to discuss the informant's reliability "does not automatically preclude a finding of probable cause." *United States v. Harris*, 735 F.3d 1187, 1192 (10th Cir. 2013). When there is "sufficient independent corroboration" of a confidential informant's information, the confidential informant's veracity need not be established. *Id.*

The magistrate judge here had a substantial basis for concluding that probable cause existed. Although we doubt the confidential informant's information alone would be sufficient, because the affidavit did not discuss the informant's reliability or veracity, the trash searches and the traffic seen at the house suggesting drug sales were occurring there provided sufficient independent corroboration. The discovery of mail addressed to Becknell's residence in the first trash search sufficiently supported an inference that the inhabitants of the home used the trash can. The discovery of cocaine residue and plastic baggies in

-13-

the third trash search sufficiently corroborated the informant's tip that an individual in the residence was selling cocaine. Consequently, there was a "substantial basis" to find probable cause.

The trial court properly denied Becknell's motion to suppress.

### D. *Sufficiency of the Evidence*

Becknell next challenges the district court's denial of his motion for judgment of acquittal. He claims there was insufficient evidence to support his convictions for possession of cocaine with intent to distribute and possession of a firearm in furtherance of a drug-trafficking offense.

#### *1. Possession of Cocaine with Intent to Distribute*

To convict Becknell on the distribution charge, the jury had to find beyond a reasonable doubt that Becknell knowingly possessed the cocaine with intent to distribute. *See United States v. Triana*, 477 F.3d 1189, 1194 (10th Cir. 2007). Constructive possession can support a conviction. *United States v. McKissick*, 204 F.3d 1282, 1291 (10th Cir. 2000). Showing that a defendant knowingly had "ownership, dominion or control over the narcotics and the premises" where they were found can demonstrate constructive possession. *United States v. Reece*, 86 F.3d 994, 996 (10th Cir. 1996). But if "contraband may be attributed to more than one individual" there must be some "nexus, link, or other connection between the defendant and the contraband." *Id.* "[M]ere dominion over the [location] and proximity to the contraband," without more, will not suffice. *Id.*

-14-

But juries "may draw reasonable inferences from direct or circumstantial evidence," as long as the inference is not rooted in "speculation or conjecture." *Id.*

A rational jury could have inferred a connection between Becknell and the cocaine demonstrating constructive possession. First, Becknell had dominion (although not exclusive dominion) over the residence. Officers found many letters addressed to him inside, and he owned a pair of keys. He also identified and claimed ownership of guns discovered in the house. Second, the government provided sufficient evidence connecting Becknell to the contraband. Officers found crack cocaine, with accompanying plastic baggies, on a table directly in front of the couch where Becknell's loaded Beretta sat. Officers found other bags of cocaine in the same room as—and within ten feet of—the Beretta. They also discovered Becknell's fingerprints on a plastic container holding cocaine.

To be sure, less evidence supports intent to distribute. Becknell admits living at the house, so officers understandably found his fingerprints on the premises. The baggies and other packaging were arguably just as consistent with cocaine use as cocaine distribution. After all, crack cocaine users—who buy their product in plastic baggies—also possess such baggies.

But the jury could have reasonably credited testimony that the cocaine found in the same room as the firearm was of a quantity most fit for distribution. They could have further inferred intent to distribute from that cocaine's proximity

to Becknell's illegally possessed gun, as well as from the fact that the residence contained no cocaine *use* paraphernalia, and from the traffic in and out of the house.

The evidence here was sufficient for a reasonable jury to find Becknell intended to distribute cocaine.

### 2. *Possession of a Firearm*

To convict, the jury had to find beyond a reasonable doubt that a firearm "furthered, promoted or advanced a drug trafficking crime." *United States v. McGehee*, 672 F.3d 860, 871 (10th Cir. 2012). The government must prove (usually through circumstantial evidence) a connection between the weapon and the crime. *Id.* We examine a "nonexclusive list" of factors in this analysis: the "type of drug activity being conducted, the accessibility of the firearm, the type of firearm, the legal status of the firearm, whether the firearm is loaded, the proximity of the firearm to drugs or drug profits, and the time and circumstances under which the firearm is found." *Id.*

Those factors show that a rational jury could have found that Becknell possessed the Beretta in furtherance of drug trafficking. First, the type of drug activity was "hand-to-hand" drug dealing, where a "dealer would want the protection of a firearm." *United States v. Maye*, 582 F.3d 622, 639 (6th Cir. 2009). Second, Becknell could readily access the Beretta; he told the officers that there were firearms in the house, and he described and claimed the firearms. The

Beretta was on a couch in the living room. Third, the jury could have reasonably believed that the type of firearm (a Beretta .380-caliber semi-automatic pistol) indicated possession in furtherance of drug trafficking. For example, Officer Schomaker testified that drug traffickers prefer handguns holding a "good amount of rounds"; when seized, the Beretta contained eight live rounds. R., Vol. III at 164, 214.

The fourth factor is not implicated here, but the fifth and sixth factors are—the gun was loaded and found within ten feet of the plastic container and the cigarette box, both of which held cocaine. And government witnesses testified that the cigarette box contained distribution quantities of cocaine. Finally, regarding the time and circumstances of the seizure, the Beretta was seized along with two other firearms, as well as with several different types of drug paraphernalia. A reasonable jury certainly could have concluded that the gun was possessed in furtherance of drug trafficking.

The district court properly denied Becknell's motion for judgment of acquittal.

### E. Congressional Power to Enact 18 U.S.C. § 922(g)(1)

Finally, Becknell challenges his convictions for felon in possession of a firearm on the basis that Congress lacked power under the Commerce Clause to enact 18 U.S.C. § 922(g), which prohibits felons from possessing a firearm that has moved in interstate commerce. *See* 18 U.S.C. § 922(g). We apply de novo

review to this challenge to Congressional power to enact a statute. *United States v. Plotts*, 347 F.3d 873, 877 (10th Cir. 2003).

Our cases squarely foreclose this argument. *See United States v. McCane*, 573 F.3d 1037, 1047 (10th Cir. 2009) (rejecting argument that Congress lacked power to enact § 922(g)); *United States v. Urbano*, 563 F.3d 1150, 1154 (10th Cir. 2009) (same). Consequently, the district court properly rejected Becknell's Commerce Clause challenge.

## III. Conclusion

We see no error, and AFFIRM Becknell's convictions.[1]

ENTERED FOR THE COURT,

Timothy M. Tymkovich
Circuit Judge

---

[1] We deny Becknell's pro se motion to file a supplemental brief.