# IN THE SUPREME COURT, STATE OF WYOMING

# 2023 WY 42

APRIL TERM, A.D. 2023

May 9, 2023

MICHAEL JOSEPH HERDT,

Appellant
(Defendant),

v.                                                        S-22-0233

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Campbell County*
*The Honorable Matthew F.G. Castano, Judge*

*Representing Appellant:*
Diane Lozano, State Public Defender; Kirk A. Morgan, Chief Appellate Counsel; Robin S. Cooper, Senior Assistant Appellate Counsel. Argument by Ms. Cooper.

*Representing Appellee:*
Bridget L. Hill, Attorney General; Jenny L. Craig, Deputy Attorney General; Kristen R. Jones, Senior Assistant Attorney General. Argument by Ms. Jones.

*Before FOX, C.J., and KAUTZ, BOOMGAARDEN, GRAY, and FENN JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**BOOMGAARDEN, Justice.**

[¶1]   Michael Joseph Herdt pled guilty to felony possession of methamphetamine after the district court denied his multiple motions to suppress, which challenged the validity of the warrant (and supporting affidavit) police obtained to search his home.  Mr. Herdt raises similar challenges on appeal.  We affirm.

## *ISSUES*

[¶2]   Mr. Herdt raises two issues, which we rephrase as:

1.  Whether the district court clearly erred when it found an officer did not recklessly omit information from the search-warrant affidavit.

2.  Whether the search warrant contained sufficient information to allow the executing officer to identify the place to be searched with reasonable effort.

## *FACTS*

[¶3]   In October 2020, Jamie Boardman called the Gillette Police Department, claiming Mr. Herdt was using methamphetamine and threatening her.  Ms. Boardman informed the dispatcher that Mr. Herdt's address was 61 Constitution Drive Apartment 4.  Before his arrival at the scene, dispatch relayed to Officer Andy Lucas that Ms. Boardman's "speech was extremely slurred and she was mumbling."

[¶4]   Officer Lucas arrived at Mr. Herdt's apartment complex with another officer and met Mr. Herdt outside.  Mr. Herdt led the officers to the apartment so they could speak with Ms. Boardman.  When the officers spoke with her, Officer Lucas observed she had "very slurred speech and she was extremely lethargic with droopy eyes."  The officers initially questioned her while Mr. Herdt was present, and she denied calling law enforcement.  Officer Lucas then asked her to speak with him outside the residence.

[¶5]   Once Ms. Boardman was outside, she admitted to calling law enforcement because she was afraid Mr. Herdt was going to kill and eat her.  She also stated Mr. Herdt used methamphetamine and she had seen a quarter ounce of it in his room but did not know where it was stored.

[¶6]   The officers informed Mr. Herdt about the drug use and possession allegations.  Mr. Herdt denied the allegations but claimed he had seen Ms. Boardman smoke meth.  Mr. Herdt consented to the officers entering the apartment to continue talking with Ms. Boardman who had gone into her room.

1

[¶7]   Officer Lucas again talked with Ms. Boardman and received her consent to search her room.  During the search, Officer Lucas found two hypodermic needles on the floor and discovered one needle was still "wet."  He asked Ms. Boardman if she was diabetic.  Ms. Boardman stated she was not diabetic and denied the needles belonged to her.  She claimed Mr. Herdt "planted" them.  After he finished searching Ms. Boardman's room, Officer Lucas asked Mr. Herdt for consent to search the rest of the home.  Mr. Herdt declined.

[¶8]   While other officers secured the residence, Officer Lucas submitted an affidavit to the circuit court for a warrant to search "61 Constitution Drive Apt. 4."  The court issued the search warrant.  The officers immediately searched Mr. Herdt's home and found several baggies of methamphetamine, one baggie of marijuana, and other items, which led to Mr. Herdt being charged with felony possession of methamphetamine, possession with the intent to deliver, and misdemeanor possession of marijuana.

[¶9]   In May 2021, Mr. Herdt's first counsel filed a motion to suppress challenging, in relevant part, the facial validity of the search warrant based on one section incorrectly stating the address to be searched as "604 Vivian Apartment A, located in Gillette, Wyoming."  Mr. Herdt then obtained new counsel who filed a legal memorandum in August 2021 asserting several new arguments in support of the motion to suppress.  Mr. Herdt changed counsel again in September 2021.  In January 2022, Mr. Herdt's third counsel filed a new motion to suppress and supplement, asserting in part that Officer Lucas' affidavit supporting the search warrant contained materially false statements and omissions that rendered the affidavit insufficient to establish probable cause under *Franks v. Delaware*, 438 U.S. 154, 155–56, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978).  The district court held a combined *Franks* and suppression hearing the next month at which Officer Lucas testified about his statements in the search-warrant affidavit.  The court soon after issued a written order denying the motions to suppress.

[¶10] Mr. Herdt entered a conditional guilty plea to felony possession of methamphetamine in violation of Wyo. Stat. Ann. § 35-7-1031(c)(ii) (LexisNexis).  The district court sentenced Mr. Herdt to 5 to 7 years of incarceration, with 16 days as credit for time served.  Mr. Herdt timely appealed.

## DISCUSSION

### I. *The district court did not clearly err in finding Officer Lucas had not recklessly omitted information from the affidavit.*

[¶11] The Fourth Amendment states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and

seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.[1]

[¶12]  Mr. Herdt contends Officer Lucas knowingly, or with reckless disregard, omitted facts from the search-warrant affidavit to mislead the court and, if the omitted facts had been included, the affidavit considered in its totality would not show probable cause.

[¶13]  To issue a valid search warrant, all the circumstances set forth in the supporting affidavit must provide the judicial officer a "substantial basis" to make an independent judgment that probable cause exists. *Illinois v. Gates*, 462 U.S. 213, 230, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983); *Mathewson*, ¶ 20, 438 P.3d at 200 (citation omitted).  When this Court reviews the affidavit, we "consider the affidavit in its totality, interpreting it in a realistic and common sense manner to determine if it presents probable cause supporting the issuance of the warrant." *Kreusel v. State*, 2023 WY 9, ¶ 16, 523 P.3d 312, 317 (Wyo. 2023) (citations omitted).  "[W]e begin with the presumption the warrant and supporting affidavit are valid" and "resolve doubtful or marginal cases by sustaining the search." *Id.* (citations omitted).

[¶14]  Under *Franks v. Delaware*:

> [W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.  In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

---

[1] We analyze Mr. Herdt's claims solely under the Fourth Amendment because he made no attempt to raise them under Article 1, § 4 of the Wyoming Constitution. *See Mathewson v. State*, 2019 WY 36, ¶ 18, 438 P.3d 189, 200 (Wyo. 2019) (citing *Sheesley v. State*, 2019 WY 32, ¶¶ 15–16, 437 P.3d 830, 837 (Wyo. 2019)).

*Franks*, 438 U.S. at 155–56; *see also Lefferdink v. State*, 2011 WY 75, ¶ 9, 250 P.3d 173, 176 (Wyo. 2011) (quoting *Davis v. State*, 859 P.2d 89, 92–93 (Wyo. 1993)). "Negligence or innocent mistake are insufficient grounds to find the misstatement should be set aside." *Davis*, 859 P.2d at 94 (citing *Franks*, 438 U.S. at 171).

[¶15]   The *Franks* rationale also applies to information police "deliberately or recklessly omitted from a search-warrant affidavit." *United States v. Jacobs*, 986 F.2d 1231, 1234 (8th Cir. 1993) (citing *United States v. Reivich*, 793 F.2d 957, 960 (8th Cir. 1986)). In these circumstances, the defendant must show "(1) that the police omitted facts with the intent to make, or in reckless disregard of whether they thereby made, the affidavit misleading, . . . and (2) that the affidavit if supplemented by the omitted information would not have been sufficient to support a finding of probable cause." *Id.* (quoting *Reivich*, 793 F.2d at 961); *see also Kapinski v. City of Albuquerque*, 964 F.3d 900, 905 (10th Cir. 2020) (citation omitted); *United States v. Garcia-Zambrano*, 530 F.3d 1249, 1254 (10th Cir. 2008) (citations omitted).

[¶16]   When a district court denies a motion to suppress based on a combined *Franks* and suppression hearing, we review the district court's factual findings for clear error on whether information was omitted intentionally to make, or with reckless disregard to whether it made, the affidavit misleading. *See Garcia-Zambrano*, 530 F.3d at 1254 (citations omitted); *Lefferdink*, ¶ 8, 250 P.3d at 175–76 (citation omitted). "We view the evidence in the light most favorable to the district court's decision because the court conducted the hearing and had the opportunity to 'assess the witnesses' credibility, weigh the evidence and make the necessary inferences, deductions and conclusions.'" *E.g.*, *Elmore v. State*, 2021 WY 41, ¶ 8, 482 P.3d 358, 361 (Wyo. 2021) (quoting *Pryce v. State*, 2020 WY 151, ¶ 16, 477 P.3d 90, 94–95 (Wyo. 2020)).

[¶17]   Mr. Herdt asserts here, as he did in the district court, that Officer Lucas knowingly, or with reckless disregard, omitted the following information from the search-warrant affidavit:

- Ms. Boardman's criminal history, mental health issues, and her obvious impairment;
- Ms. Boardman is bipolar, takes several medications, and made bizarre statements to the officers at the apartment;
- Ms. Boardman made inconsistent statements to the officers which a magistrate would have wanted to know about; and
- Officer Lucas failed to test the liquid found in the two hypodermic needles for drugs yet still described them in the affidavit as "drug paraphernalia found on the floor in [Ms. Boardman's] room . . ."

Mr. Herdt does not argue on appeal how these omissions undermine probable cause, but he generally asserts the affidavit would be "insufficient" if these omissions had been included.

4

[¶18]  In its order denying Mr. Herdt's motions to suppress, the district court found Officer Lucas did not know about Ms. Boardman's criminal or mental health history, and thus did not recklessly omit that information.  However, the court did find Officer Lucas was aware Ms. Boardman was bipolar, taking several medications, and had made several bizarre statements.  The court acknowledged the officer should have included this information in the affidavit but ultimately found the omissions were not reckless.  The court further found Ms. Boardman's bizarre statements could be consistent with intoxication and it was reasonable to infer Ms. Boardman was under the influence of drugs.  Thus, even if these details were included in the affidavit, the court issuing the warrant could still find probable cause.  The court also found the inconsistencies Mr. Herdt identified in Ms. Boardman's statements to be immaterial.  Lastly, the district court found Officer Lucas' omission regarding his failure to test the hypodermic needles was not reckless because "the issuing court could have reasonably inferred that syringes laying on the floor contain drugs[.]"

[¶19]  Mr. Herdt does not purport to show clear error in any of the district court's factual findings related to Ms. Boardman.  Mr. Herdt only challenges the district court's alleged failure to strike the phrase "drug paraphernalia" from the affidavit after Officer Lucas testified he never tested the hypodermic needles found in Ms. Boardman's room for drugs.  Mr. Herdt primarily contends Officer Lucas could not truthfully inform the issuing court the hypodermic needles were "drug paraphernalia" unless he tested them, and thus it was reckless to omit this information from the affidavit.

[¶20]  Mr. Herdt argues that omitting the failure to test the hypodermic needles is reckless because it is "highly relevant," similar to the drug dog's failure to alert in *United States v. Jacobs*, 986 F.2d 1231, 1234 (8th Cir. 1993).  Mr. Herdt's analogy is unpersuasive.  In *Jacobs*, officers suspected a package sent in the mail contained drugs.  *Id.* at 1232–33.  The officers intercepted the package and brought in a drug dog to conduct a canine sniff.  *Id.* at 1233.  The drug dog showed an "interest" in the package but did not officially alert to the presence of drugs.  *Id.*  One of the officers subsequently filed an affidavit as part of a warrant application to search the package.  *Id.*  In the affidavit, the officer stated the drug dog had an "interest" in the package but omitted the dog's failure to alert.  *Id.* at 1233, 1234.  The officer was issued a search warrant.  *Id.* at 1233.  On appeal, the court acknowledged whether the drug dog alerted to the suspected package was critical to the issuing court's probable cause determination and was thus "highly relevant in nature[.]"  *See id.* at 1234–35 ("Without an alert, the police clearly lacked the probable cause necessary to open the package.").  The officer's omission was held to be reckless because the affidavit misled the court into believing probable cause existed.  *Id.*

[¶21]  In this matter, whether Officer Lucas tested the hypodermic needles has no bearing on the issuing court's probable cause determination.  When a judicial officer is presented with an affidavit supporting a search-warrant application, the issuing court need only make a "practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime

5

will be found in a particular place." *Gates*, 462 U.S. at 238. The search-warrant affidavit stated both Mr. Herdt and Ms. Boardman accused each other of drug use, and Ms. Boardman told officers she observed methamphetamine in Mr. Herdt's room. The affidavit indicated Ms. Boardman had "very slurred speech and she was extremely lethargic with droopy eyes" which allowed the issuing court to infer Ms. Boardman was intoxicated. In this context, the affidavit then stated Officer Lucas found two hypodermic needles in Ms. Boardman's room and noted through his training and experience he knew these types of needles were used for injecting methamphetamine. Under these circumstances, the issuing court had a substantial basis to make the common-sense determination that a fair probability existed drugs could be found in Mr. Herdt's home—even if Officer Lucas had indicated in the affidavit he never tested the hypodermic needles. Therefore, the district court did not clearly err in finding Officer Lucas' omission was not a knowing or reckless act to make the search-warrant affidavit misleading. We conclude the court properly denied Mr. Herdt's motions to suppress under *Franks*. *See Garcia-Zambrano*, 530 F.3d at 1254; *Lefferdink*, ¶ 8, 250 P.3d at 175–76.

## II. The search warrant contained sufficient information to allow Officer Lucas to identify the place to be searched with reasonable effort.

[¶22] Mr. Herdt next asserts the search warrant was invalid because it failed to particularize the correct place to be searched when it stated an incorrect address on its face.[2]

[¶23] The Fourth Amendment requires warrants to "particularly describ[e] the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV; *see also Groh v. Ramirez*, 540 U.S. 551, 557, 124 S. Ct. 1284, 157 L. Ed. 2d 1068 (2004). This Court has not directly addressed the Fourth Amendment's particularity requirement in analyzing whether a warrant sufficiently described the place to be searched. Our cases have addressed only whether a warrant sufficiently described the things to be seized. *E.g.*, *Taylor v. State*, 7 P.3d 15, 21–23 (Wyo. 2000) (considering whether a warrant particularly describing the thing to be seized as an "Uzi-type weapon" limited officers' ability to continue searching for other items after the weapon had been found); *Hall v. State*, 911 P.2d 1364, 1369–70 (Wyo. 1996) (considering whether a warrant sufficiently described an engine as the thing to be seized).

[¶24] Whether considering the place or things to be searched, the purpose of the particularity requirement is to "ensure[] searches do not exceed the scope of the probable cause justifying them." *United States v. Garcia*, 707 F.3d 1190, 1197 (10th Cir. 2013) (citation omitted); *see also Hall*, 911 P.2d at 1369. And, we review the ultimate question

---

[2] The district court stated that at the suppression hearing Mr. Herdt only challenged the affidavit in support of the search warrant and thus likely waived the incorrect address argument. Mr. Herdt contends, and the State concedes, the incorrect address argument was properly preserved.

6

of whether the search was legally justified de novo. *Elmore*, ¶ 8, 482 P.3d at 361 (citations omitted); *see also Garcia*, 707 F.3d at 1194.

[¶25] In determining the adequacy of a warrant's description of the location to be searched, the Tenth Circuit Court of Appeals has established the following two-prong test: (1) whether the description is sufficient to enable the executing officer to locate and identify the premises with reasonable effort, and (2) whether there is any reasonable probability that another premise might be mistakenly searched. *E.g., Garcia*, 707 F.3d at 1197 (quoting *United States v. Lora-Solano*, 330 F.3d 1288, 1293 (10th Cir. 2003); *see also United States v. Abdalla*, 972 F.3d 838, 845 (6th Cir. 2020) (citation omitted); *United States v. Deloera-Escalera*, 636 F. App'x 977, 980 (10th Cir. 2016) (citations omitted).

[¶26] Under this test, "[p]ractical accuracy, not technical precision, determines whether a search warrant adequately describes the premises to be searched." *Garcia*, 707 F.3d at 1197 (quoting *United States v. Dorrough*, 927 F.2d 498, 500) (10th Cir. 1991)); *Deloera-Escalera*, 636 F. App'x at 980 (citation omitted). Therefore, "[a] technically wrong address does not invalidate a warrant if it otherwise describes the premises with sufficient particularity so that the police can ascertain and identify the place to be searched." *Lora-Solano*, 330 F.3d at 1293; *see also Abdalla*, 972 F.3d at 846 ("Even though a warrant containing the wrong address can sometimes risk a mistaken search, such an 'error does not invalidate a search warrant if the warrant includes other specific descriptors that remove the probability that the wrong location could be searched[.]'" (citation omitted)).

[¶27] The body of the search warrant Officer Lucas executed contained a single reference to an incorrect address: "604 Vivian Apartment A, located in Gillette, Wyoming." It is undisputed this address does not describe the location of Mr. Herdt's apartment. The warrant's caption however clearly states the correct address at "61 Constitution Drive Apt. 4." Officer Lucas also knew the correct address because he had arrived at the location before applying for the search warrant. *See United States v. Brakeman*, 475 F.3d 1206, 1211–12 (10th Cir. 2007) (concluding that the knowledge of executing officers can supplement the information in the warrant to cure any ambiguity).

[¶28] Additionally, when there is a discrepancy in a warrant, "the executing officer may seek clarification in an attached affidavit." *Deloera-Escalera*, 636 F. App'x at 980 (citation omitted); *see also Groh*, 540 U.S. at 557–58 ("[A] court may construe a warrant with reference to a supporting application or affidavit if the warrant uses appropriate words of incorporation, and if the supporting document accompanies the warrant."). The warrant in this matter incorporated the supporting affidavit, which contained the correct address to be searched in four different locations. First, the affidavit articulated the address in the caption as "61 Constitution Drive Apt. 4," then below the caption it stated the address as "61 Constitution drive apartment 4," and twice in Officer Lucas' factual narrative it stated the address as "61 Constitution apartment 4." The affidavit further noted "[t]he residence is currently being secured by Officer Hoang and Officer Cyr."

7

[¶29] The correct address stated within the warrant's caption and clarified in the affidavit, the executing officer's knowledge of the location to be searched, and the affidavit's acknowledgment of the other officers' presence at that location was more than sufficient to enable Officer Lucas to locate and identify Mr. Herdt's apartment with reasonable effort. The above circumstances virtually eliminated the possibility the incorrect address would be searched. *See Garcia*, 707 F.3d at 1197. The search warrant was sufficiently particular to remain valid under the Fourth Amendment.

[¶30] Affirmed.