# IN THE SUPREME COURT, STATE OF WYOMING

## 2025 WY 17

**OCTOBER TERM, A.D. 2024**

**February 10, 2025**

RICHARD JOEY GARCIA,

Appellant
(Defendant),

v.                                                                          S-24-0148

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Fremont County*
*The Honorable Kate G. McKay, Judge*

*Representing Appellant:*
> Office of the State Public Defender: Brandon Booth, Wyoming State Public Defender\*; Kirk A. Morgan, Chief Appellate Counsel; Jeremy Meerkreebs, Senior Assistant Appellate Counsel\*\*. Argument by Mr. Meerkreebs.

*Representing Appellee:*
> Bridget Hill, Attorney General; Jenny L. Craig, Deputy Attorney General; Kristen Reeves Jones, Senior Assistant Attorney General, Donovan Burton, Assistant Attorney General. Argument by Mr. Burton.

*Before FOX, C.J., and BOOMGAARDEN, GRAY, FENN, and JAROSH, JJ.*

\*An Order Substituting Brandon Booth for Ryan Roden was entered on October 10, 2024.

\*\*An Order Substituting Jeremy Meerkreebs for Robin S. Cooper was entered on December 16, 2024.

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FOX, Chief Justice.**

[¶1]    Richard Joey Garcia was convicted of possession with intent to deliver fentanyl. On appeal, he contends the district court erred in denying his two motions to suppress, one claiming the search of his camper exceeded the scope of the search warrant, and the other claiming misrepresentations and omissions in the affidavit supporting the warrant. Mr. Garcia also contends the court erred when it summarily denied his motion for a new trial based on newly discovered evidence. We affirm.

## ISSUES

[¶2]    This appeal presents two issues:

1. Did the district court err in denying Mr. Garcia's motions to suppress evidence obtained in the search of his camper?

2. Did the district court err in summarily denying Mr. Garcia's motion for a new trial based on the discovery of new evidence?

## FACTS

[¶3]    On July 19, 2023, Detective Ryan Wangberg of the Lander Police Department obtained a search warrant for premises located at 6762 Highway 28 in Fremont County, Wyoming. The property was owned by Dana Scott Sims, but Mr. Garcia and his girlfriend, Lisa Apadaca, were staying in a camper on the property. The affidavit in support of the warrant cited information from a confidential source that fentanyl was being used on the property; that Mr. Garcia and Ms. Apadaca lived in a camper on the property; and that Ms. Apadaca makes one to two trips per week to Utah to obtain fentanyl. The warrant authorized a search of the premises for controlled substances, including fentanyl, drug paraphernalia, and items related to the distribution of controlled substances.

[¶4]    Detective Wangberg led a law enforcement team in the execution of the warrant. Law enforcement searched the main residence, the camper in which Mr. Garcia and Ms. Apadaca were staying, and a vehicle located next to the camper.

[¶5]    Two officers were assigned to search the camper, and one of them knocked on the camper door and announced their presence. The officers found the door locked, and each officer knocked a second time and again announced their presence. They heard a male voice say, "hang on I'm coming," and after some seconds passed, one of the officers, Officer Ryan Pieracini of the Lander Police Department, began to pry the door open.

1

About twenty to thirty seconds after the officers first knocked, Mr. Garcia opened the camper door.

[¶6]   Officer Pieracini directed Mr. Garcia to exit the camper, and his partner placed Mr. Garcia in handcuffs. When Officer Pieracini asked Mr. Garcia if there was anybody else in the camper, he said there was no one else. Officer Pieracini then checked the camper and located Ms. Apadaca in a compartment underneath the bed. He had Ms. Apadaca stand up, and he handcuffed her and patted her down to check for weapons or contraband. In her pocket, he found a small bag containing 72 fentanyl pills.

[¶7]   In a search of the camper, law enforcement found drug paraphernalia, a scale, and individual baggies commonly used to store or distribute controlled substances. In Mr. Sim's bedroom in the main residence, they found drug paraphernalia, and misdemeanor amounts of methamphetamine, marijuana, heroin, and fentanyl.

[¶8]   Mr. Garcia and Ms. Apadaca were arrested for possession of fentanyl with intent to distribute. The State charged Mr. Garcia with four felonies: possession with intent to deliver fentanyl (pill form); possession with intent to deliver fentanyl (powder form); possession with intent to deliver methamphetamine; and delivery of fentanyl (pill form).

[¶9]   Mr. Garcia filed a motion to suppress evidence obtained in the search of the camper in which he and Ms. Apadaca were staying, contending, among other things, that the camper was not within the scope of the search warrant. The district court found that Detective Wangberg's affidavit in support of the search warrant identified the camper as a target of the warrant and the affidavit otherwise established a sufficient nexus between criminal activity and the camper, and it denied the motion to suppress.

[¶10] Mr. Garcia next moved to suppress the evidence obtained pursuant to the search warrant based on his allegations that the affidavit supporting the search warrant contained material misrepresentations and omissions. He requested a hearing on the motion pursuant to the United States Supreme Court decision of *Franks v. Delaware,* 438 U.S. 154, 98 S. Ct. 2674, 2681, 57 L.Ed.2d 667 (1978) (a *Franks* hearing). The district court held the hearing, made numerous findings concerning the alleged misrepresentations and omissions, and concluded that "none of the statements made in the Affidavit were made with reckless disregard for the truth, nor was any information omitted in reckless disregard of whether it thereby made the affidavit misleading." The court thus denied the motion to suppress.

[¶11] The case against Mr. Garcia proceeded to a three-day bench trial at which Ms. Apadaca testified that she had traveled out of state with Mr. Garcia to purchase the fentanyl that was found in her pocket and that she and Mr. Garcia were partners in the

distribution of illegal drugs.[1] She further testified that when law enforcement knocked on the camper door to execute the search warrant, Mr. Garcia shoved her into the compartment underneath the bed and put the bag of fentanyl in her pocket. Mr. Garcia did not testify but offered a theory in closing that Ms. Apadaca operated alone and testified against him only to obtain a plea agreement reducing the charges against her.

[¶12]  The district court found Mr. Garcia guilty of possession with intent to deliver fentanyl in pill form but acquitted him of the other three counts. Mr. Garcia filed a motion for a new trial entitled, "Motion for Hearing for New Trial under W.R.Cr.P. 34," which claimed to be based on newly discovered evidence. The motion was based on potentially exculpatory evidence in data from Ms. Apadaca's cell phone requested prior to trial, and it requested that the court set a hearing to receive testimony from Detective Wangberg and Ms. Apadaca concerning the data.

[¶13]  The district court did not set a hearing on Mr. Garcia's motion, and at sentencing commented, "The Defendant did file a Motion for new trial under Criminal Rule 34, which I think was intended to be 33, the State did not respond, and the Court basically allowed that – that Motion to lapse and it was deemed denied 15 days after its filing." The court entered judgment against Mr. Garcia and sentenced him to a prison term of two and a half to six years. Mr. Garcia timely appealed to this Court.

## DISCUSSION

### I.      *The district court did not err in denying Mr. Garcia's motions to suppress.*

### A.      **The camper was within the scope of the search warrant.**

[¶14]  The front page of the search warrant issued in this case stated that based on the information in his affidavit, Detective Wangberg had reason to believe that controlled substances and evidence related to the distribution of controlled substances would be located on the premises of 6762 Hwy 28 and "in any and all vehicles, campers and out buildings known to be utilized by occupants of said residence within the curtilage of (sic)[.]" The second page incorporated Detective Wangberg's affidavit and specified the property he was authorized to search by checking one of three boxes, as follows: "() on the person (X) on the premises () in the vehicles." Detective Wangberg testified at the suppression hearing that he prepared the form and checked the premises box believing it to be the category that encompassed every part of the property, including the camper, as identified in his affidavit.

---

[1] Ms. Apadaca entered into a plea agreement with the State. In exchange for her testimony against Mr. Garcia, the State reduced the charges against her to felony possession of fentanyl with a recommended sentence of a three-to-six-year prison term suspended in favor of three years of probation.

[¶15] Mr. Garcia moved to suppress the evidence gathered from the search of the camper and Ms. Apadaca, arguing the search exceeded the scope of the warrant because the term "premises" did not include the camper. The district court denied the motion. It concluded that whether the camper was within the scope of the warrant did not depend on whether it was within the curtilage of the premises because the warrant contemplated a search of the camper. It reasoned that Detective Wangberg's affidavit stated Mr. Garcia and Ms. Apadaca lived in the camper followed by information that Ms. Apadaca was selling fentanyl. Thus the court found the affidavit established a nexus between the camper and criminal activity and identified the camper as a target of the warrant. Mr. Garcia challenges this ruling, maintaining on appeal that authority to search the premises did not include authority to search the camper.

[¶16] In reviewing a ruling on a motion to suppress, we defer to the district court's findings of fact unless they are clearly erroneous. *Chace v. State*, 2024 WY 20, ¶ 9, 542 P.3d 1078, 1081 (Wyo. 2024). "The ultimate question of whether the search or seizure violated a constitutional right is a question of law that we review de novo." *Id*.; *see also United States v. Angelos*, 433 F.3d 738, 745 (10th Cir. 2006) (review of a search warrant's scope is de novo).

[¶17] The scope of a warrant is important because the Fourth Amendment requires a search warrant to "particularly describe the place to be searched, and the persons or things to be seized." *Herdt v. State*, 2023 WY 42, ¶ 23, 528 P.3d 862, 867 (Wyo. 2023).[2] "Whether considering the place or things to be searched, the purpose of the particularity requirement is to 'ensure searches do not exceed the scope of the probable cause justifying them.'" *Id*. at ¶ 24, 528 P.3d at 868 (quoting *United States v. Garcia*, 707 F.3d 1190, 1197 (10th Cir. 2013)).

[¶18] In determining the adequacy of a search warrant's description of the location to be searched, we look to a two-pronged test: "(1) whether the description is sufficient to enable the executing officer to locate and identify the premises with reasonable effort, and (2) whether there is any reasonable probability that another premise might be

---

[2] Mr. Garcia also cites to Article 1, section 4 of the Wyoming Constitution and notes our recognition that the Wyoming Constitution provides greater protection than its federal counterpart because it requires an affidavit to support a search warrant rather than an oath or affirmation. There is no dispute, however, that the warrant here was supported by an affidavit as required by Article 1, section 4; the issue concerns the scope of the warrant. Mr. Garcia has not provided an independent analysis of the Wyoming Constitution as it pertains to that question, and we therefore analyze his claim solely under the Fourth Amendment. *See Mathewson v. State*, 2019 WY 36, ¶ 18, 438 P.3d 189, 200 (Wyo. 2019) (considering claim that affidavit failed to establish probable cause for warrant only under the Fourth Amendment where there was no dispute an affidavit was submitted and defendant provided no independent State analysis of the probable cause question).

4

mistakenly searched." *Herdt*, 2023 WY 42, ¶ 25, 528 P.3d at 868 (citing *Garcia*, 707 F.3d at 1197). In applying this test, we may "construe a warrant with reference to a supporting application or affidavit if the warrant uses appropriate words of incorporation, and if the supporting document accompanies the warrant." *Herdt*, 2023 WY 42, ¶ 28, 528 P.3d at 868 (quoting *Groh v. Ramirez*, 540 U.S. 551, 557-58, 124 S. Ct. 1284, 157 L. Ed. 2d 1068 (2004)); *see also United States v. Callwood*, 66 F.3d 1110, 1113 (10th Cir. 1995) ("When reviewing a warrant, 'we read together all properly incorporated or referenced components of the warrant, including the attached application and affidavit.'") (quoting *United States v. Occhipinti*, 998 F.2d 791, 799 (10th Cir. 1993)). And "practical accuracy, not technical precision, determines whether a search warrant adequately describes the premises to be searched." *Herdt*, 2023 WY 42, ¶ 26, 528 P.3d at 868 (quoting *Garcia*, 707 F.3d at 1197); *see also Schirber v. State*, 2006 WY 121, ¶ 5, 142 P.3d 1169, 1172 (Wyo. 2006) ("In order to promote the warrant process, and remembering that affidavits are not normally executed by legal technicians, this Court resolves doubtful or marginal cases in this area in favor of sustaining the warrant.").

[¶19]  The cover affidavit Detective Wangberg submitted in support of his request for a search warrant stated he had reason to believe that evidence of criminal activity would be found on the premises of 6762 Highway 28 and "in any and all vehicles, campers and out buildings known to be utilized by occupants of said residence within the curtilage of."[3] The cover affidavit incorporated a second more detailed affidavit that included the following:

> 15.    On March 25, 2023, Lisa Apadaca was arrested by the Fremont County Sheriff's Department at 6762, Highway 28, Fremont County, Wyoming. This property belongs to [Dana Scott Sims] and is known as a location where the use and distribution of controlled substances takes place. At the time of Lisa's booking, at the Fremont County Detention Center, she was in possession of a cell phone.
>
> 16.    On March 28, 2023, I, Detective Wangberg, along with Agent Phillips, spoke with Lisa at the Fremont County Detention Center in Lander, Fremont County, Wyoming. Lisa discussed purchasing, using and the distribution of fentanyl in Fremont County. Lisa also stated she was using fentanyl at the time of her arrest.

---

[3] This was the same language used on the first page of the warrant to identify areas where Detective Wangberg believed controlled substances and related items would be found.

17.    On March 29, 2023, while reviewing phone calls made from the Fremont County Detention Center, I listened to a call made by Lisa to whom I believe is a coconspirator in selling and distributing fentanyl in Fremont County. During the phone call, Lisa arranged for someone to take custody of her phone that was in her jail property. The person Lisa spoke with discussed trying to remotely delete some type of information on her phone but was unsuccessful.

18.     On March 29, 2023, I went to the Fremont County Detention Center and seized the phone. I know through training and experience that cellular phones commonly have incriminating information that is electronically stored.

19.    On March 29, 2023, I prepared an affidavit for search warrant for the cell phone believed to be Lisa's. The Honorable Judge Coombs ultimately signed the warrant. I returned to the Fremont County Detention Center and placed a copy of the warrant in the property the phone was taken from.

20.    The cell phone was then taken to the Wyoming Division of Criminal Investigation Office in Riverton, Fremont County, Wyoming. There, it was downloaded into a Cellebrite Reader. I received the downloaded information on March 31, 2023.

21.    Reviewing messages both sent and received to Lisa's phone, I observed what I recognized from training and experience as "drug talk".

22.    On April 6, 2023, I interviewed Lisa at the Fremont County Detention Center. . . Lisa confessed to traveling to Ogden, Utah, where she was "fronted" one hundred (100) blue fentanyl pills and then traveled to 6762 Highway 28, Lander, Fremont County, Wyoming. The date she arrived at this address was the date she was arrested on, March 25, 2023. The pills she described having were never seized. Lisa was later released from the Fremont County Detention Center to attend treatment and serve time with Probation and Parole. She did not check in with Probation and Parole nor did she go to treatment.

6

26.     On July 13, 2023, Agent Phillips and I spoke with a Confidential Source (hereinafter referred to as CS) about Richard Garcia and Lisa Apadaca. The CS told us that Lisa and Richard live in a camper trailer next to the house belonging to Dana Scott Sims at 6762 Highway 28, Lander, Fremont County, Wyoming. The CS stated he/she has lived with Dana Scott Sims and helps care for him and is aware of the use of fentanyl at the property. This CS also explained that Lisa makes one (1) to two (2) trips for suspected fentanyl a week. The CS also stated they believed Lisa traveled to Ogden, Utah for fentanyl which corroborates what Lisa had told me.

[¶20]  The language contained in Detective Wangberg's cover affidavit, and repeated in the search warrant, which refers to campers or vehicles within the curtilage of the premises creates an ambiguity. Generally, when a warrant allows premises to be searched that includes areas within the curtilage of premises, which are those areas under the control of the owner or occupant of the identified premises. *See Guerra v. State*, 897 P.2d 447, 459 (Wyo. 1995). That, however, is a technical interpretation of the terms premises and curtilage, and our task is to give the warrant and incorporated affidavit a practical reading. When we do that, and read the warrant and affidavits together, it is clear that the camper occupied by Mr. Garcia and Ms. Apadaca had been connected to criminal activity and was a target of the search. The camper was particularly described as an area to be searched, and the search therefore did not exceed the scope of the warrant.

**B.     The record supports the district court's findings that Detective Wangberg's affidavit contained no material misrepresentations or omissions, and the court therefore did not err in denying Mr. Garcia's motion to suppress based on *Franks v. Delaware*.**

[¶21]  "To issue a valid search warrant, all the circumstances set forth in the supporting affidavit must provide the judicial officer a 'substantial basis' to make an independent judgment that probable cause exists." *Herdt*, 2023 WY 42, ¶ 13, 528 P.3d at 865 (citing *Illinois v. Gates*, 462 U.S. 213, 230, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983)). Owing to this long-established requirement, the United States Supreme Court held in *Franks v. Delaware*:

[W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false

statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

438 U.S. at 154, 155-56, 98 S. Ct. at 2681; *see also Herdt*, 2023 WY 42, ¶ 14, 528 P.3d at 865.

[¶22] The *Franks* holding also applies to information police "deliberately or recklessly omitted from a search-warrant affidavit." *Herdt*, 2023 WY 42, ¶ 15, 528 P.3d at 865 (quoting *United States v. Jacobs*, 986 F.2d 1231, 1234 (8th Cir. 1993)). "In these circumstances, the defendant must show '(1) that the police omitted facts with the intent to make, or in reckless disregard of whether they thereby made, the affidavit misleading, ... and (2) that the affidavit if supplemented by the omitted information would not have been sufficient to support a finding of probable cause.'" *Herdt*, 2023 WY 42, ¶ 15, 528 P.3d at 866 (quoting *Jacobs*, 986 F.2d at 1234).

[¶23] "To establish recklessness, 'there must exist evidence that the officer in fact entertained serious doubts as to the truth of his allegations.'" *Kapinski v. City of Albuquerque*, 964 F.3d 900, 908 (10th Cir. 2020) (quoting *Stonecipher v. Valles*, 759 F.3d 1134, 1142 (10th Cir. 2014)). Recklessness may be inferred from "circumstances evincing obvious reasons to doubt the veracity of the allegations." *Kapinski*, 964 F.3d at 908 (quoting *Beard v. City of Northglenn*, 24 F.3d 110, 116 (10th Cir. 1994)). Recklessness may also "be inferred from omission of facts which are 'clearly critical' to a finding of probable cause." *Kapinski*, 964 F.3d at 908 (quoting *DeLoach v. Bevers*, 922 F.2d 618, 622 (10th Cir. 1990)). "Negligence or innocent mistake are insufficient grounds to find the misstatement should be set aside." *Herdt*, 2023 WY 42, ¶ 14, 528 P.3d at 865.

[¶24] In his motion for a *Franks* hearing, Mr. Garcia claimed there were reckless or intentional misrepresentations or omissions in multiple paragraphs of Detective Wangberg's affidavit, but he focused his argument on a single paragraph of the affidavit. The district court found that Mr. Garcia had made the threshold showing for a *Franks* hearing but following the hearing it concluded that Mr. Garcia had failed to show that Detective Wangberg had intentionally or recklessly omitted material information or intentionally or recklessly misrepresented material information. Mr. Garcia challenges that ruling.

8

[¶25] When a district court denies a motion to suppress following a *Franks* hearing, we review its factual findings for clear error, including its findings on whether information was intentionally or recklessly omitted or misrepresented. *Herdt*, 2023 WY 42, ¶ 16, 528 P.3d at 866 (citing *United States v. Garcia-Zambrano*, 530 F.3d 1249, 1254 (10th Cir. 2008)); *see also United States v. Ray*, 799 Fed.Appx. 599, 602 (10th Cir. 2020) ("Our review grants particular deference to the district court's determinations 'regarding the truth or falsity of statements in the affidavit and regarding the intentional or reckless character of such falsehoods.'") (quoting *United States v. Campbell*, 603 F.3d 1218, 1228 (10th Cir. 2010)); *see also United States v. Brown*, 631 F.3d 638, 642 (3d Cir. 2011) (noting unanimity among the circuits that "a district court's resolution of the question whether a particular false statement in a warrant affidavit was made with reckless disregard for the truth is subject to reversal only upon a finding of clear error"). "We view the evidence in the light most favorable to the district court's decision because the court conducted the hearing and had the opportunity to 'assess the witnesses' credibility, weigh the evidence and make the necessary inferences, deductions and conclusions." *Herdt*, 2023 WY 42, ¶ 16, 528 P.3d at 866. "A finding is clearly erroneous when, 'although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Wearmouth v. Four Thirteen, LLC*, 2024 WY 116, ¶ 20, 558 P.3d 935, 942 (Wyo. 2024) (quoting *In re J. Kent Kinniburgh Revocable Tr.*, 2023 WY 56, ¶ 21, 530 P.3d 579, 586 (Wyo. 2023)).[4]

---

[4] Mr. Garcia quotes *Mathewson v. State* for the proposition that our review of a district court's ruling following a *Franks* hearing is for an abuse of discretion. *See Mathewson v. State*, 2019 WY 36, ¶ 38, 438 P.3d 189, 205 (Wyo. 2019) ("When this process is followed, we review the denial of a motion to suppress raising false information claims for an abuse of discretion."). *Mathewson* cited *Davis v. State*, 859 P.2d 89, 93 (Wyo. 1993), which did hold that abuse of discretion was the standard of review following a *Franks* hearing. However, our modern suppression cases have applied a standard of review that calls for a clear error review of a district court's findings of fact, and a de novo review of conclusions of law including "the ultimate determination regarding the constitutionality of a particular search or seizure." *Kobielusz v. State*, 2024 WY 10, ¶ 30, 541 P.3d 1101, 1109-10 (Wyo. 2024) (quoting *Clay v. State*, 2016 WY 55, ¶ 14, 372 P.3d 195, 197 (Wyo. 2016)); *see also TJS v. State*, 2005 WY 68, ¶ 9 n.1, 113 P.3d 1054, 1057 n.1 (Wyo. 2005) (clarifying that the applicable standard for reviewing the constitutional sufficiency of an affidavit supporting a search warrant is de novo and rejecting the concept of deference in that review). A *Franks* determination of an affidavit's adequacy is potentially a two-step process. First, the district court must determine whether there was a reckless or intentional misrepresentation or omission of material information from the affidavit. *Herdt*, 2023 WY 42, ¶¶ 14-15, 528 P.3d at 865-66. If the court finds such a misrepresentation or omission, it must determine whether that would have changed the probable cause determination. *Id*. That second determination, if reached, is a conclusion of law subject to de novo review. *United States v. Gehrmann*, 731 Fed. Appx. 792 (10th Cir. 2018) ("[W]e 'review the district court's ultimate determination that the corrected affidavit supports a finding of probable cause de novo.'") (quoting *Campbell*, 603 F.3d at 1228). To the extent *Mathewson* and *Davis* hold that the standard of review following a *Franks* hearing is for an abuse of discretion, they are overruled.

[¶26] As he did below, Mr. Garcia focuses his assertions of intentional or reckless omissions and misrepresentations on Paragraph 26 of Detective Wangberg's affidavit. Paragraph 26 states:

> On July 13, 2023, Agent Phillips and I spoke with a Confidential Source (hereinafter referred to as CS) about Richard Garcia and Lisa Apadaca. The CS told us that Lisa and Richard live in a camper trailer next to the house belonging to Dana Scott Sims at 6762 Highway 28, Lander, Fremont County, Wyoming. The CS stated he/she has lived with Dana Scott Sims and helps care for him and is aware of the use of fentanyl at the property. This CS also explained that Lisa makes one (1) to two (2) trips for suspected fentanyl a week. The CS also stated they believed Lisa traveled to Ogden, Utah for fentanyl which corroborates what Lisa had told me. When asked about people who have overdosed at the residence, the source described the incident involving [MP] and [EW]. The CS stated both [EW] and [MP] had left the property of Sims shortly before the CS heard about the overdose. The CS also stated that a female named [KE] also recently overdosed in [Dana Scott Sim's] residence but was brought back. This corroborated what I was told by a Probation and Parole Agent on July 2, 2023. The source of this information wanted to be anonymous, and I was unable to find other reports about the overdose.

[¶27] The interview of the confidential source was recorded, and Mr. Garcia had a transcript made of that recording, which he introduced during the *Franks* hearing. Based on that transcript, Mr. Garcia alleged eight material misrepresentations or omissions in Paragraph 26, and he repeats those same allegations on appeal.

> 1.    The CS was arrested shortly before the interview and charged with use of a controlled substance;
>
> 2.    The CS began the interview alleging that she had been assaulted by Richard Garcia and Lisa Apodaca (sic), but was unsure where the assault occurred, only that it was outside of "the boss's house," then "inside the boss's house;"
>
> 3.    The CS admitted during the interview that he/she was drunk and had used methamphetamine;

10

4. The CS never stated that she had any knowledge that [EW] or [MP] had obtained fentanyl from anyone on either property prior to [MP's] overdose;

5. The CS explained that she only saw [MP] in passing, and that Richard Garcia had come out from his trailer and forced [EW] to leave the property because she was not welcome there;

6. Under questioning by Agent Phillips regarding the source of the fentanyl that caused [MP's] overdose, the CS stated that she did not know who provided the fentanyl. Agent Phillips follow up question was "Who do you think they got it from?" to which she replied "Who do I think? Richard."

7. The CS never provides any specific details regarding her personal knowledge or first-hand observations of drug use or distribution on the property, and denies knowledge of such activities. The only time the CS ever mentions anything related to fentanyl use on the property was an overdose approximately one week before the interview;

8. In response to Agent Phillips (sic) questioning regarding "trips" made by Lisa Apodaca (sic), the CS states that Lisa is from Ogden. She never states that Lisa travels to Ogden to obtain controlled substances and specifically denies knowledge of the purpose of the trips.

[¶28] Based on the testimony of Detective Wangberg and its review of the transcript of the CS's interview, the district court made specific findings of fact concerning each of the above allegations. In some instances, the court concluded that perhaps omitted information should have been included but its omission did not make the affidavit misleading, and it concluded Detective Wangberg did not recklessly or intentionally omit the information to make the affidavit misleading.

[¶29] Concerning the allegation that the CS was drunk during the interview and had used methamphetamine, information Mr. Garcia argued should have been included to allow the issuing judge the opportunity to assess the CS's credibility, the district court concluded:

On this point, [Detective Wangberg] testified credibly that he had not suspected that the CS was under the influence. She seemed like she was understanding the questions, even

11

correcting officers when they made a misstatement. She was lucid. The court cannot find that Detective Wangberg made a reckless omission. Further, the omission of this fact did not make the affidavit misleading, especially given that the chief value in the information from the CS was merely to corroborate already known information.

[¶30]  As to Mr. Garcia's allegation that the affidavit misrepresented that the CS told Detective Wangberg that she believed Lisa Apadaca traveled to Ogden, Utah for fentanyl, the district court found this to be "the single actual misstatement in the affidavit." The court concluded:

> In fact, the CS stated in the interview that Defendant and Apadaca make trips "maybe once or twice a week," in response to a question by the investigator. The investigator's question was clearly intended to inquire about trips to get fentanyl. The CS did not in fact state, as asserted in the Affidavit, that these trips were to Ogden, Utah. However, in response to the question "Do you know where Lisa goes?" the CS stated "Huh-uh. I know she's from Ogden."
>
> This linkage of fentanyl trips and Ogden was an understandable characterization or inference about the CS's statement. It was, at most, a negligent misrepresentation. . . Further, [Detective Wangberg] was already in possession of information (which is included in the affidavit) that Lisa Apadaca herself admitted to making trips to Ogden to obtain fentanyl. This statement was simply not made in reckless disregard for the truth. Had it been separated and repeated in exactly the way stated by the CS, it would have been no less valuable to a finding of probable cause.

[¶31]  After its consideration of Detective Wangberg's testimony and the transcript of the CS's interview, the district court concluded with the following:

> In sum, as mentioned above, the court finds that the testimony of the Affiant was entirely credible. As to each misstatement or omission that Defendant complains of above, the Affiant's testimony established either that the omission was not made recklessly, or that based upon the context of the interview, countervailing information made the omission or "misleading" statement reasonable.

In each instance, based upon the context of the interview, the Affiant simply summarized his understanding of what he had been told. At worst, the Affiant's understanding, or his conclusion from the facts actually stated by the CI, could have been subject to different interpretation. While it would have been preferable for the Affiant, Detective Wangberg, to have stated facts more directly, none of the statements made in the Affidavit were made with reckless disregard for the truth, nor was any information omitted in reckless disregard of whether it thereby made the affidavit misleading.

[¶32]  On appeal, Mr. Garcia renews the arguments he made to the district court as to why Detective Wangberg's statements in Paragraph 26 made the affidavit misleading. These arguments are misplaced because at this juncture, the question is not whether the affidavit was misleading; the question is whether the district court clearly erred in finding that Detective Wangberg did not intentionally or recklessly omit or misrepresent information to make the affidavit misleading. *See United States v. Sanchez*, 725 F.3d 1243, 1248 (10th Cir. 2013) (defendant's appeal on first prong of *Franks* failed because he did not challenge district court's findings as clearly erroneous).

[¶33]  Mr. Garcia does not challenge any of the district court's findings as clearly erroneous, and based on our review of the record we find no clear error. The gist of Mr. Garcia's *Franks* motion was that Detective Wangberg, intentionally or recklessly, overstated the CS's knowledge of drug use on the property and the involvement of Mr. Garcia and Ms. Apadaca in those activities. In fact, in the interview of the CS, she stated she had witnessed numerous fentanyl overdoses on the property, and she said as follows concerning the activities of Mr. Garcia and Ms. Apadaca on the property:

> AGENT PHILLIPS: Do people come over to [Dana Scott Sim's] house to meet up with Richard and Lisa to get fentanyl that you know of, since you live there?
>
> [CS]: Yeah. And I really just watch over the old man and make sure he's safe.
>
> * * *
>
> AGENT PHILLIPS: So generally all the fentanyl is coming from Lisa and Richard around [Dana Scott Sim's] house, whether they're meeting with people and stuff, so –

> [CS]: Yeah. And I hate to be the one to say that, because I'm not a rat.

[¶34] When we review the record in the light most favorable to the district court's findings, it plainly supports the court's finding that Detective Wangberg did not intentionally or reckless misrepresent or omit material information with an intent to make his affidavit misleading. We thus affirm the court's rejection of Mr. Garcia's *Franks* claim.

## II.     *The district court did not commit reversible error when it summarily denied Mr. Garcia's motion for a new trial.*

[¶35] A defendant may move for a new trial pursuant to W.R.Cr.P. 33. Rule 33(b) directs that the court shall rule on a motion for new trial on any ground other than newly discovered evidence within fifteen days, and if the court does not rule the motion shall be deemed denied. Rule 33(c) governs motions for a new trial based on newly discovered evidence and requires that the court hold a hearing on the motion, or include in its order denying the motion a statement of the reason it ruled without a hearing.

[¶36] Mr. Garcia filed a timely motion requesting a new trial, though he styled it a motion pursuant to W.R.Cr.P. 34. The motion concerned data from Lisa Apadaca's cell phone that Mr. Garcia had requested before trial. It alleged that Ms. Apadaca, through counsel, had refused to give consent to law enforcement to obtain a download of that data. It then stated:

> 10.     W.R.Cr.P. 34(c) permits a Court to order a new trial within two years of final judgment if the motion is based on newly discovered evidence.
>
> 11.     As defense counsel does not have the phone data from Lisa Apodaca (sic), it is unclear whether or not the phone date (sic) will provide exculpatory evidence in favor of Mr. Garcia; however, Lisa Apodaca (sic) entered into a non-prosecution agreement with the State of Wyoming that provides her what is essentially immunity from prosecution for any crimes she committed in relation to her charges or involvement with Mr. Garcia.
>
> 12.     The fact that Lisa Apodaca (sic) is refusing to allow Detective Wangberg to inspect the phone data, coupled with the lack of investigation before trial or follow up on Defendant's specific request for this data pursuant to

14

W.R.Cr.P. 16, indicates that the phone likely contains exculpatory information.

13. Defendant requests that the Court set this matter for hearing as this is newly discovered evidence that may exculpate the Defendant[.]

[¶37] The district court did not set a hearing on the motion, and at sentencing, it indicated that it assumed the motion to be pursuant to W.R.Cr.P. 33 and that it was deemed denied when the court did not rule on it within fifteen days. Mr. Garcia contends the court erred in denying his motion without complying with the procedure set forth in Rule 33(c). We need not decide if the failure to follow the Rule 33(c) process was error, because we agree with the State that if it was error, it was harmless. *See* W.R.Cr.P. 52(a) ("Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded.").

[¶38] "Motions for a new trial based on newly discovered evidence are not favored by the courts and are viewed with great caution." *Dockter v. State*, 2019 WY 31, ¶ 10, 436 P.3d 890, 893 (Wyo. 2019) (citation omitted). A defendant must establish all four of the following elements to earn a new trial:

> (1) that the evidence has come to his knowledge since the trial; (2) that it was not owing to the want of due diligence that it did not come sooner; (3) that it is so material that it would probably produce a different verdict, if the new trial were granted; and (4) that it is not cumulative, viz., speaking to facts in relation to which there was evidence at the trial.

*Id*. (quoting *Emerson v. State*, 2016 WY 44, ¶ 12, 371 P.3d 150, 153 (Wyo. 2016)). "[A] motion for a new trial on the grounds of newly discovered evidence shall not be granted where the evidence is solely to impeach a witness." *Emerson*, 2016 WY 44, ¶ 18, 371 P.3d at 155.

[¶39] Mr. Garcia's motion did not allege any of the required elements for a new trial based on newly discovered evidence. First the motion did not allege evidence had come to his knowledge since trial. It instead sought a new trial based on data from Ms. Apadaca's phone that he had not seen but had requested prior to trial. The existence of the data was thus plainly something Mr. Garcia knew of before trial. Additionally, Mr. Garcia admitted in his motion that he had no knowledge of exculpatory evidence contained in the data, and it is also apparent from his motion that he wished to use it solely for purposes of impeaching Ms. Apadaca's testimony. Finally, Mr. Garcia's motion does not allege that he could not have obtained the data before trial through the exercise of due diligence.

15

[¶40] Given the lack of merit in Mr. Garcia's motion, a hearing would have been fruitless. We thus conclude that if there was any error in the district court's failure to treat the motion as one brought under W.R.Cr.P. 33(c), that error was harmless.

[¶41] Affirmed.